BUBIS *et al. v.* CITY OF NASHVILLE *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Feb. 4, 1939.

TRABUE, HUME & ARMISTEAD and ELKIN GARFINKLE, all of Nashville, for plaintiffs.

BASS, BERRY & SIMS, of Nashville, for Colley.

W. C. CHERRY, CHARLES G. BLACKARD, and E. C. YOKLEY, JR., all of Nashville, for City of Nashville.

MR. JUSTICE COOK delivered the opinion of the Court.

The petition for *certiorari* was filed to review and set aside action of the City Planning and Zoning Commission, on the ground that it acted arbitrarily in granting a permit to C. K. Colley for the erection of an apartment house in Cherokee Park Subdivision, at variance with the zoning ordinance.

The cause was heard by the trial judge upon the petition, answer and exhibits, and he sustained the action of the Board of Appeals and dismissed the petition. The petitioners appealed and insist that the trial judge erred because the Board had no power to vary the zoning ordinance, its action was contrary to the powers conferred upon it, and its ruling was not justified by the facts.

It appears from the record that in 1929 W. F. Randolph conveyed to C. K. Colley eight lots in Block "J" of the Cherokee Park Subdivision. The subdivision had been platted and laid off by blocks and lots. Mr. Colley purchased all of Block "J" for use in the erection of an apartment building. The property was sold to Colley with notice to adjacent lot owners and the public that the deed to Colley contained a provision that Block "J" could be used for an apartment house. A statement to that effect was incorporated in his deed. In the convey-

ance to petitioners, who acquired property in another block nearby, the use of the lots was restricted to residences, and petitioners' deed recited that the restrictions it contained did not apply to Block "J" on the plat of the subdivision, and it was stated that the right was reserved to rearrange and change Block "J" in whole or in part.

Such was the status of petitioners and C. K. Colley when the city limits were extended to include the Cherokee Park Subdivision and also when the zoning ordinance was passed by the City Council. By the zoning ordinance, Lots 10, 11, 12 and 13, in Block "J", acquired by Colley for an apartment, were placed in residential district "C", and Lots 8, 9, 21 and 22, were cut off into residential district "A". The line between District "A" and District "C" cut through the block acquired by Mr. Colley for the erection of an apartment. The erection of an apartment building is not prohibited on Lots 10, 11, 12 and 13, in District "C", but the restrictions in District "A" do not allow apartment buildings. When Mr. Colley applied for a permit, the superintendent of buildings refused to grant it because the apartment he proposed to erect extended beyond Zoning District "C" into District "A" where apartments were prohibited. Mr. Colley appealed to the Board of Zoning Appeals. There was a hearing before the Board and after hearing the parties interested, including petitioners and defendant Colley, the Board of Zoning Appeals found from the evidence that:

"(1) The tract of land owned by C. K. Colley is divided by the boundary line between a Residence A District and a Residence C District, lots Nos. 8, 9, 21 and 22 in Block J being in a Residence A District and lots Nos.

10, 11, 12 and 13 of Block J being in a Residence C District.

"(2) The principal portion of the apartment house structure will be located within the Residence C Zone and the garage buildings will be located entirely within the Residence A Zone.

"(3) In order that the Supervisor of Buildings may issue the necessary building and occupancy permits for the erection of the proposed apartment house and garages, it would be necessary for this Board to exercise the powers vested in it by Section 12 of Ordinance No. 871.

"(4) In order to authorize the construction of the apartment house building and the accessory garages, it would be necessary for this Board to extend the provisions of the Residence C District into the Residence A District, and also to make certain variances in the detailed requirements of the Residence C District provisions of the Zoning Law.

"(5) The proposed apartment building and the accessory uses thereto would not conform in all respects with the detailed provisions of the Residence C District in that the available lot area provides for only 43 families whereas it is proposed to house 56 families; the number of garages is limited by the terms of the Ordinance to 48 whereas 53 are provided; the area of the garages is limited by the law to 7818 square feet whereas the area covered by the garages embrace 8645 square feet, and the total lot area available for the proposed layout is 31,279 square feet, whereas the Zoning Ordinance requires 34,500 square feet.

"And, after due consideration of the facts as submitted in this case, this Board is of the opinion that variances

in. the strict terms of the Zoning Law are advisable for the reason that the entire tract of land owned by C. K. Colley was purchased and platted specifically for apartment house use prior to its incorporation into the City of Nashville and prior to the effective date of the Zoning Law and, since said tract of land was laid out for apartment house use, there are now practical difficulties in the way of carrying out the strict letter of the provisions of the Zoning Law. . . ."

██ ██ Upon that finding of facts, the Board authorized the extension of the apartment building into Zone "A" and, subject to limitations, ordered a permit issued. The trial judge committed no error in refusing to set aside the action of the Board. The Board had jurisdiction to hear evidence and determine whether or not a variance should be allowed. That power was conferred by Section 12 of Ordinance 871 of the City of Nashville. The ordinance provides:

"The Board of Zoning Appeals shall have power to permit exceptions to and variations with the regulations as follows:

"(1)   Permit the extension of an existing or proposed building or use into a more restricted district under such conditions as will safeguard the character of the more restricted district.

. . . . . . .

"(2)   Where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this ordinance, the Board of Zoning Appeals shall have power in a specific case to vary the application of any such provision in harmony with the general purpose and intent of this ordinance so that the

public health, safety, morals and general welfare may be secured and substantial justice done."

The legislature broadly delegated to the City Council the power to pass the foregoing ordinance creating the Board, with power to hear and determine appeals from a refusal of the supervisor of buildings to grant permits and also with power to vary zoning regulations in order to remove practical difficulties and do substantial justice in the way of carrying out the strict letter of the regulations.

The act providing a zoning system for the City of Nashville is Chapter 209, Private Acts of 1925. Subsection 6, Section 2, of the Act provides:

"The City Council may create an administrative board to administer the details of the applications of the ordinances and regulations, and may delegate to such Board, in accordance with the provisions set forth in the regulations, the power to hear and determine appeals from a refusal of building permits by Building Commissioners, Boards, Bureaus, or other officers, and to exercise, jurisdictional powers with respect to the administration of the regulations as specified therein. These administrative powers and functions may be delegated by the City Council to the City Planning Commission or to the Zoning Commission."

We find no error in the judgment of the trial court.

Affirmed.