27 So.2d 561

### PENTECOSTAL HOLINESS CHURCH OF MONTGOMERY v. DUNN et al.

#### 3 Div. 446.

Supreme Court of Alabama.

June 20, 1946.

Rehearing Denied Oct. 24, 1946.

Gerald & Gerald, of Clanton, for appellant.

Walter J. Knabe, of Montgomery, for appellees.

Jack Crenshaw, of Montgomery, for intervenors.

LIVINGSTON, Justice.

This is a petition filed in the Circuit Court of Montgomery County, Alabama, seeking a writ of mandamus compelling the commissioners, building inspector, and city engineer of the city of Montgomery, Alabama, to issue to appellant, the Pentecostal Holiness Church of Montgomery, Alabama, a corporation, a permit to build a church building on lots 11 and 12 in Block 26 of the plat of Highland Park in the city of Montgomery for the use of the members of said church for religious services.

The petition alleges that appellant is a corporation under the laws of Alabama, and that it is the owner in fee simple of the lots described, and that it desires to erect a church building to be used by its congregation for religious worship.

The petition sets forth that in January of 1945, the appellant filed with agents of the city of Montgomery plans and specifications drawn by a competent architect, and its authority or priority obtained by petitioner from the War Production Board of

the United States, authorizing the erection of the church building, which plans were approved by the building inspector of the city, and that it paid the customary fee requested in such cases, and that there was issued to it a permit to build said building. That the proper permission and priorities were obtained and no sewage disposal problem was presented on account of the construction and maintenance of such church. That after the issuance of such permit, and on towit January 22, 1945, certain property owners of the neighborhood made objection to the board of commissioners of the city of Montgomery, against the erection of such church building, and that as a result of such objections, on the 16th day of February, 1945, a hearing of such matter was held before the city commission in the city of Montgomery and a judgment was rendered by such board of commissioners whereby the original permit to build such church was revoked, and that the request for a new permit was denied, basing such action solely upon the proposition that the erection of such church would violate section 855 of the zoning ordinance of the city of Montgomery in that such church building would be a building "of a substantially different type or size from the existing buildings in the immediate vicinity." The petition further shows that the ordinance forbidding such a building was a part of the comprehensive zoning system established by the city of Montgomery, and that by such part the board of commissioners has denied the petitioner the right to erect its church building on said property for the purpose of using the same to conduct religious services, and appellant further averred that it has been ready, willing and able at all times to comply with any reasonable terms and conditions imposed by said city for the issuance of its permit, and that it has complied with all of the statutes and ordinances of the city of Montgomery to entitle it to have issued to it a building permit to construct the church building involved, and that the only question is as set forth in the part of the board of commissioners of Montgomery, as to the construction of said section 855 of the zoning code.

After the filing of such petition and upon the same coming on to be heard before the court, the respondents filed an answer admitting certain portions of the petition and denying other portions thereof.

In the answer it is alleged that the application for a building permit requested permission to erect a building of concrete blocks with no plumbing and heating, and the approval of the War Production Board was secured on that basis; that the granting of the permit was conditioned upon appellant installing two lavatories and two toilets in said church building, and that said church building would be erected with the consent of the property owners for a distance of 300 feet from the exterior lot lines on both sides of the street or streets upon which appellant's lots abut.

Upon such hearing, various parties who were property owners in and near the location of the property on which it is proposed to build said church building, filed a petition seeking to intervene in said cause, which petition shows their ownership of property at or near the site of said proposed church and alleging that the erection thereof would result in an irreparable injury to them, and setting forth that the building would not be erected by competent builders, but by volunteer labor of members of appellant's organization, and that there is no assurance as to the manner in which said building will be erected, or as to the length of time that would be required, etc. Such intervention further avers, on information and belief, that appellant's organization is not an established church, but that it represents a commercial enterprise by the so-called pastor of such organization, who is directly interested in the financial return thereof. Such petition further avers, on information and belief, that such church does not have a creed of worship in the usual sense of the word, but that their services consist of appeals to passion and emotion and in an attempt to inculcate emotional frenzy resulting in manifestations of disorderly and sacrilegious nature, and that in general such proposed building, if erected on the property of appellant, would be objectionable to such intervenors.

The appellant demurred to the petition of intervention, raising the question, among others, that no facts are averred in said petition which show that the intervenors have an interest in the matter and litigation, or in the success of either of the parties, or an interest against both the plaintiff and defendant, or that any issue is presented to the court for determination which was not already presented by the petition and answer filed in this cause. That all of the issues presented by the petition were already raised by the original petition and answer in this cause, and that no facts are shown, which developed that the issuance of the permit or the denial thereof, would bear any reasonable relationship to the public health, safety, morals or general welfare of the community.

The intervenors in this cause undertook to show by testimony of various witnesses that the appellant had, before its incorporation and some months before this litigation occurred, held a tent meeting some six or seven blocks from the community in which it was proposed to erect this church. That this meeting was held during the summer time, and that while the sound of loud talking could be heard at their homes, that what was said could not be designated, and the intervenors attempted to inject into the case the difference in the doctrine between this church and other churches, and proved only the fact that the method of offering prayer in this church permitted all members to pray at the same time, if they desired. The intervenors' proof failed to show that the doctrine and practices of this church were in anywise such as would bar it from the claim that it was a protestant church and entitled to the ordinary considerations as such.

Upon a submission of this case to the court, the application for the writ of mandamus was denied. The trial court basing the refusal thereof solely upon the proposition that the United States War Production Board had approved appellant's application for authority to construct the church, and that while petitioner averred that it had complied with all statutes and ordinances of the city of Montgomery and was ready, willing and able to comply with the terms imposed by the city, that the permit introduced as showing the authority granted by the War Production Board failed to include plumbing. This permit was issued January 11, 1945, and the court found that this was a reasonable exercise of the city's zoning and police power, and that appellant had not complied with these requirements, and therefore denied the petition.

Section 247, Title 7, Code of 1940, providing for intervention in actions and proceedings, has been held to be cumulative to the common-law remedy for intervention, and "the petition for intervention must by proper averments show interest of the applicant in the pending litigation and should contain facts sufficient to show that the intervenor is entitled to the relief sought." Gravely v. Phillips, 23 Ala.App. 471, 127 So. 248, 249; Awbrey v. Estes, 216 Ala. 66, 112 So. 529; Cortner v. Galyon, 223 Ala. 405, 137 So. 30. To like effect is the language of the court in Smith v. Gale, 144 U.S. 509, 12 S.Ct. 674, 676, 36 L.Ed. 521, as follows: "The intervention must be not only to protect the direct and immediate interest of the intervenor in a suit, but she is bound to make that interest appear by proper allegations in her petition."

The relief sought by intervenors is an injunction prohibiting appellant from erecting a church building on property owned by it. The proof offered by intervenors does not justify such relief, and the trial court granted none. But we think this is unimportant in the instant case. The pivotal question here is whether the city's zoning ordinance prohibits the erection of a church in the "A" residential district.

Certain sections of the city's zoning ordinance were introduced in evidence. The "A" residence district is described in section 850 of the ordinance, and petitioners' property is situated therein. Section 851 of the ordinance provides: "It shall be unlawful to construct, erect, remodel or repair any store, filling station, automobile laundry, garage, or any other type of building to be used for commercial purposes within the 'A' residential districts as above described and shown by the zone map."

Section 855, provides: "No buildings of a substantially different type or size from

the existing buildings in the immediate vicinity shall be erected on any block in this area except with the consent of the property owners for a distance of three hundred feet from the exterior lot lines on both sides of the street or streets upon which the proposed building site abuts. The required distance on the side or sides of the street or streets opposite from side or sides on which the building is to be located shall be computed by measurement from the respective points on the said opposite side or sides of such street or streets where the exterior lot lines of said proposed building site, if extended, touch said opposite side or sides of the street or streets. It shall also be necessary to secure the unanimous consent of the owners of lots first and second removed from the proposed site, also the two owners of the lots immediately across the street in front of such proposed building and also any other owners of the lots immediately across the street in front of such proposed building and also any other owners whose lots abut on such proposed building site. Provided, that in cases where the property owner or owners whose unanimous consent is required, fail or refuse to state his or their objection, or should his or their objection seem trivial, or if it appears that such owner or owners are merely holding up the proposed improvement for the purpose of selling his or their property then the city commission reserves the right to notify such owner or owners together with the party desiring to make the improvement to meet the city commission on a fixed date. The city engineer shall give written notice to the parties in interest of the place and time of such hearing before the city commission, and if at such hearing the objections of the property owner or owners shall seem trivial or not well taken, the city commission reserves the right to overrule such objections, and to instruct the city engineer to issue a permit for the proposed improvement."

Whether a city has constitutional authority under legislative permission to exclude churches from residential sections, we are clearly of opinion that section 851 of the zoning ordinance here involved does not do so. Its only purpose is to set apart

residential, as contradistinguished from business property. State ex rel. Howell v. Meador, Mayor, 109 W.Va. 368, 154 S.E. 876.

We are unable to discover any difference or distinction in effect between section 855 of the zoning ordinance, here considered, and section 8 of the ordinance considered in the case of Longshore v. City of Montgomery, 22 Ala.App. 620, 119 So. 599, 600, certiorari denied, 218 Ala. 597, 119 So. 601. It was there said:

"Section 8 of the zoning ordinance of the city of Montgomery, above quoted, seems to us to fall directly under the ban of the Fourteenth Amendment of the Constitution of the United States, in the same way, and to the same extent, as the municipal enactment discussed in the opinion in the case of City Council of Montgomery v. West, 149 Ala. 311, 42 So. 1000, 9 L.R.A., N.S., 659, 123 Am.St.Rep. 33, 13 Ann.Cas. 651. The views expressed in the opinion in that case, by the Supreme Court of our state, which are controlling upon us, appear never to have been changed. As there stated:

"'An ordinance (and, of course, any part of the ordinance; in this case, section 8, above quoted) of a city, to be valid, "must be impartial and general in its operation. So far as it restricts the absolute dominion of the owner over its property, it should furnish a uniform rule of action, and its application cannot be left to the arbitrary will of the governing authorities. Ordinances which invest a city council, or a board of trustees, or officers [and we may here interpolate, adjoining property owners], with a discretion which is purely arbitrary, and which may be exercised in the interest of a favored few, are unreasonable and invalid."'

"And further:

"'Municipal ordinances, placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct of business, and must admit of the exercise of the privilege by all citizens alike who will comply with such rules and conditions, and must not admit of the exercise * * * of any

arbitrary discretion by the municipal authorities between citizens who will so comply.'"

 So far as we know the views expressed above have never been changed. We must therefore declare section 855, supra, unconstitutional and void.' And it is clear enough that the action of the city commission in revoking the permit issued, and in refusing to issue another permit, was predicated solely on petitioner's noncompliance with said section 855.

With section 855, supra, stricken, we find nothing in the sections of the zoning ordinance introduced in evidence to justify the refusal of a permit to erect a church in the "A" residential district.

 As we understand the trial court's decree, its refusal to award mandamus is based upon the fact that the authority from the United States War Production Board to erect a church building provides for the erection of the building without plumbing; and that the approval of the plans submitted to the building inspector of the city was specifically conditioned on changes being made by petitioner, to consist of the addition of two toilets and two lavatories, one for each sex, and that petitioner had not complied with these requirements.

In the first place, we seriously doubt that the authority of the United States War Production Board, in respect to securing building materials, in anyway affected petitioner's right to the city's building permit.

In the second place, we are of the opinion that petitioner was ready, able and willing to meet all of the city's requirements at the time the building permit was refused, except the requirements set forth in section 855 of the zoning ordinance.

Petitioner's pastor, J. V. Owen, testified in response to the question propounded as follows: "Q. You heard my question as to your ability to meet the terms and conditions. I will ask you now if you were ready, willing and able to meet the terms and conditions required for the issuance of the permit at the time of these hearings before the commission, at the time the original permit was revoked and the application for a new one was denied, except in respect to furnishing the consent of the property owners in that community, as the city claims you should do? A. Yes."

On the record before us, we are to the conclusion that petitioner is entitled to the writ of mandamus, and the cause must be reversed. The permit to be issued shall be conditioned upon a compliance with all sanitary and police regulations of the city of Montgomery.

Writ of mandamus awarded; reversed and rendered.

GARDNER, C. J., and BROWN and STAKELY, JJ., concur.