50 So.2d 244

**NELSON et al. v. DONALDSON.**
**3 Div. 576.**

Supreme Court of Alabama.
Jan. 25, 1951.

Jack Crenshaw, of Montgomery, for appellants.

Hill, Hill, Stovall & Carter and Rives & Godbold, all of Montgomery, for appellee.

LAWSON, Justice.

This is an appeal from a judgment of the circuit court of Montgomery County up-

holding an order of the Board of Adjustment of the City of Montgomery whereby that board ordered the City Building Inspector to issue a building permit to C. T. Donaldson, the appellee here.

In 1948 the City of Montgomery enacted a zoning ordinance, which became effective on November 19, 1948. This ordinance was enacted and adopted in conformity with Title 37, Chapter 16, §§ 774–785, inclusive, of the 1940 Code of Alabama. Under this ordinance the City of Montgomery is divided into a number of districts and the use of property located in the various districts is prescribed. As to residence A–1 districts, the use is limited to single family dwellings, with some few additional uses, such as churches, public libraries, public parks, accessory structures, etc. Neither dwellings for two families nor apartment houses are permitted in residence A–1 districts. An apartment house is defined as a building containing three or more family dwelling units.

The ordinance provides that "except as otherwise provided, no structure or land shall be used hereafter and no structure or part thereof shall be erected, altered or moved unless in conformity with the regulations herein specified for the district in which it is located." However, with exceptions not here pertinent, any structure or use existing or under construction at the time the ordinance was enacted, or at the time it is changed by amendment, is permitted to continue, even though such structure or use is not in conformity with the provisions of the ordinance. But no nonconforming use or structure can be extended unless such extension conforms with the provisions of the ordinance as to the district in which it is located.

The ordinance provides that its terms are to be enforced by the building inspector of the city and it is made unlawful for anyone to commence the excavation for or the construction of any building or other structure until the building inspector of the city has issued for such work a building permit, including a statement that the plans, specifications and intended use of such structure in all respects conform with the provisions of the ordinance.

The ordinance further provides for the establishment of a board of adjustment. It does not purport to set out the powers of the board of adjustment, but provides that the appointment, procedure, powers and actions of the board of adjustment are governed and controlled by the provisions of § 781, Title 37, Code 1940, as it may be amended. Since the board of adjustment is provided for in the ordinance, its powers stem directly from the statute and may not be circumscribed, altered or extended by the municipal governing body. Under these circumstances, the inclusion in the zoning ordinance of a word-for-word recital of the statutory powers of the board would be superfluous. Duffcon Concrete Products, Inc., v. Borough of Cresskill, 1 N.J. 509, 64 A.2d 347, 9 A.L.R.2d 678.

The powers of the board of adjustment, as enumerated in § 781, Title 37, supra, are in pertinent part as follows: " * * * To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto. To hear and decide special exceptions to the terms of the terms (sic) of the ordinance upon which such board is required to pass under such ordinance. *To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.* * * *" (Emphasis supplied.)

In exercising such powers, the board of adjustment may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision, or determination as ought to be made, and to that end has all the powers of the officer from whom the appeal is taken. § 781, Title 37, Code 1940.

By § 783, Title 37, Code 1940, it is provided: "Any party aggrieved by any final

80

judgment or decision of such board of zoning adjustment, may within fifteen days thereafter appeal therefrom to the circuit court or court of like jurisdiction, by filing with such board a written notice of appeal specifying the judgment or decision from which appeal is taken. In case of such appeal such board shall cause a transcript of the proceedings in the cause to be certified to the court to which the appeal is taken *and the cause in such court be tried de novo.*" (Emphasis supplied.)

Shortly prior to February 11, 1950, the appellee, Donaldson, made application to the city building inspector for a permit to build an apartment house on the front of a lot owned by him at 709 Federal Drive, which is in a residence A–1 district, wherein the construction of an apartment house is prohibited. The permit was not issued. On February 11, 1950, Donaldson took an appeal to the board of adjustment. On February 25th the board of adjustment entered an order granting a variance to Donaldson and ordered that a permit be issued to him to construct the apartment house.

Certain persons owning property in the vicinity of 709 Federal Drive appealed to the circuit court of Montgomery County. The cause was tried *de novo* in the circuit court on or about March 21, 1950, and a judgment was entered by that court affirming the order of the board of adjustment and ordering that a permit be issued to Donaldson to construct the apartment house, on the ground that under the evidence he was entitled to a variance from the terms of the. ordinance. From the judgment of the circuit court the objecting property owners have appealed to this court.

Our zoning statutes seem to be generally in harmony with the Standard State Zoning Enabling Act prepared under the auspices of the Federal Department of Commerce, which act has been adopted in many of the states. See McQuillan, Municipal Corporations, 3d Ed., Vol. 8, § 25.219. The board of adjustment in some of the states is called a board of appeals. In other states, it is called by the same name as is designated in our statute. In most of the states, the proceeding for a judicial review of the decision or order of the board of adjustment is by certiorari, but in some of the states the proceeding for such review is by appeal, the same method as is provided in our statute.

The inquiry in the circuit court is neither enlarged nor diminished by appeal. The scope of inquiry on appeal is the same as before the board of adjustment, though the circuit court is a court of general jurisdiction. In other words, under our statute the authority of the circuit court on appeal to permit a variance from the terms of the ordinance is the same as that conferred on the board of adjustment by § 781, Title 37, Code 1940. Vogel v. Board of Adjustment for City of Manchester, 92 N.H. 195, 27 A.2d 105; Oklahoma City et al. v. Harris et al., 191 Okl. 125, 126 P.2d 988; In re McInerney, 47 Wyo. 258, 34 P.2d 35. In Oklahoma City et al. v. Harris, supra, it was pointed out that under the Oklahoma law, review of the order or decision of the board of adjustment is by appeal and it was held that on appeal the district court "sits as a glorified board of adjustment."

The dominant question raised by appellants is whether or not the power given by § 781, Title 37, Code 1940, to vary the effect of the zoning ordinance in specific cases includes the power to authorize a nonconforming use, that is, a use which is prohibited by the ordinance. Appellants insist that such authority is not conferred by § 781, Title 37 supra; that the privilege to erect a nonconforming building or a building for a nonconforming use cannot be granted under the guise of a variance permit; that the authority to permit variances from the terms of the zoning ordinance conferred by § 781, Title 37, supra, is restricted to slight modifications as to height, area, distance from boundaries, etc.

In support of their contention, appellants argue that to construe the language of § 781, Title 37, supra, relating to the powers of the board of adjustment to authorize a variance from the terms of an ordinance as giving the board power to authorize a nonconforming use, would result in its unconstitutionality, in that it would be an un-

constitutional delegation of legislative power to an administrative agency, there being no sufficient standards, rules, restrictions or limitations under which the board should act in reaching its conclusions.

The specific question has not been decided by this court. In Leary v. Adams et al., 226 Ala. 472, 477, 147 So. 391, 396, we pretermitted as unnecessary to the decision in that case the assertion that the power of the board of adjustment to authorize a variance was limited to minor details, saying: "The city contends that the board of adjustment was limited in its functions to hear appeals concerning minute details and principally as to height and area only, and was without authority to modify the zoning ordinance as here sought. This may present a debatable question (In re Rose Builders' Supply Co., 202 N.C. 496, 163 S.E. 462; Falvo v. Kerner, 222 App.Div. 289, 225 N.Y.S. 747; People ex rel. Sheldon v. Board of Appeals, 234 N.Y. 484, 138 N.E. 416), the consideration of which may well await the necessity for its determination."

While it is true that no body in which is vested the legislative power may abdicate its legislative function by delegating power to another body to make the law, it is equally well established that the legislative body may delegate to a subordinate body the power to execute and administer its laws, where the legislative body has formulated a standard reasonably clear to govern the action of such subordinate body. While these general rules are well settled, their applicability probably never will be. The ever-recurring problem is whether any statute constitutes an unlawful delegation of legislative power or merely a power to administer and execute the declared policy of the legislative body within reasonably clear standards fixed by the statute.

The courts in other jurisdictions have been called upon on numerous occasions to consider the effect of the provisions in zoning laws and ordinances permitting variances, in identical or substantially the same language as contained in § 781, Title 37, Code 1940. The decisions of such courts are in decided conflict.

In Welton v. Hamilton, 344 Ill. 82, 176 N.E. 333, 337, the Supreme Court of Illinois held that a statute of that state, in so far as it attempted to confer authority on the board of appeals to grant variances from the terms of the zoning ordinance where there are practical difficulties or unnecessary hardships in carrying out the letter of the ordinance, was unconstitutional on the ground that: "The statute gives no direction, furnishes no rule, and provides no standard for determining what are practical difficulties or unnecessary hardships which justify setting aside the provisions of the ordinance and varying or modifying their application, but leaves those questions to be determined by the unguided and unlimited discretion of the board." The effect of this decision, as we understand it, was to deprive the board of appeals of authority even to grant variances as to minor details. See Speroni v. Board of Appeals of City of Sterling et al., 368 Ill. 568, 15 N.E. 2d 302; People ex rel. Danielson v. City of Rockford et al., 338 Ill.App. 347, 87 N.E.2d 660.

In several other states it has been held, in effect, that under the provisions of ordinances and statutes similar to those of our state here under consideration, the board of adjustment or board of appeals could grant variances as to minor details of construction, etc., but that they could not authorize nonconforming uses, for to do so would be to exercise a legislative function. Nicolai et al. v. Board of Adjustment of City of Tucson, 55 Ariz. 283, 101 P.2d 199; Bray et al. v. Beyer et al., 292 Ky. 162, 166 S.W. 2d 290; Sims et al. v. Bradley et al., 309 Ky. 626, 218 S.W.2d 641; Jack Lewis, Inc., v. Mayor and City Council of Baltimore, 164 Md. 146, 164 A. 220; Sugar v. North Baltimore Methodist Protestant Church, 164 Md. 487, 165 A. 703, Cf. Heath et al. v. Mayor and City Council of Baltimore et al., 187 Md. 296, 49 A.2d 799, and Heath v. Mayor and City Council of Baltimore et al., 190 Md. 478, 58 A.2d 896; Lee et al. v. Board of Adjustment of City of Rocky Mount, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1; James v. Sutton, Chief Building Inspector, et al., 229 N.C. 515, 50 S.E. 2d 300; Livingston v. Peterson, 59 N.D.

104, 228 N.W. 816; Harrington v. Board of Adjustment of City of Alamo Heights, Bexar County, et al., Tex.Civ.App., 124 S. W.2d 401; Texas Consolidated Theatres v. Pittillo, Tex.Civ.App., 204 S.W.2d 396; Board of Adjustment et al. v. Stovall et al., Tex.Civ.App., 218 S.W.2d 286; Walton v. Tracy Loan & Trust Co. et al., 97 Utah 249, 92 P.2d 724.

In the recent case of Flynn v. Zoning Board of Review of City of Pawtucket, R. I., 73 A.2d 808, the Supreme Court of Rhode Island held, in substance, that the subsection of a zoning ordinance authorizing the board of review to grant exceptions to the terms of the ordinance so as to permit a nonconforming use was invalid as an attempt to re-delegate legislative power delegated to the city by the state legislature. As to whether the power to authorize variances as to nonconforming uses is affected by that decision is not clear.

Counsel for appellants cite the case of Civil City of Indianapolis et al. v. Ostrom Realty & Construction Co., 95 Ind.App. 376, 176 N.E. 246, as holding that in Indiana the board of zoning appeals was without power to authorize a nonconforming use under any circumstances. We do not think that case so holds. In O'Connor et al. v. Overall Laundry, Inc., et al., 98 Ind.App. 29, 183 N.E. 134, 137, it was held that the board of zoning appeals "has power to permit and authorize exceptions and variations from the district regulations in the class of cases or the particular situation *specified in the ordinance.* In the instances set out in the ordinance and in absolutely no other instance has the board any power to 'vary.'" We think the following Indiana cases show that the board of zoning appeals in that state do have the power to authorize nonconforming uses in certain instances. Board of Zoning Appeals v. Waintrup, 99 Ind.App. 576, 193 N.E. 701; Board of Zoning Appeals v. Moyer, 108 Ind.App. 198, 27 N.E.2d 905; Keeling et al. v. Board of Zoning Appeals of City of Indianapolis et al., 117 Ind.App. 314, 69 N.E. 2d 613.

In Anderson et al. v. Jester et al., 206 Iowa 452, 221 N.W. 354, 358, it was held that the delegation of power to the board of adjustment to authorize variances was not unconstitutional. As to the power conferred to authorize a variance it was said: "The power of the board of adjustment is to vary, to make special exceptions to the application of the zoning and use regulations, not to vary, further than as the incidental effect in the specific case, boundaries or the provisions of the ordinance. * * * The variance must be reasonable, not arbitrary. It may not under the same circumstances be granted to one and withheld from another. The power is to be used in subordination to the general welfare, and not for the benefit of one who does not bring himself within the terms of the statute * * * The power may not be arbitrarily exercised and its exercise must be confined strictly within the limitations of the statute. * * * "

Without any treatment of the constitutional question, the Supreme Court of Missouri in State ex rel. Nigro v. Kansas City et al., 325 Mo. 95, 27 S.W.2d 1030, held, in effect, that the board of zoning appeals was not empowered to authorize a nonconforming use. To like effect is In re Botz, 236 Mo.App. 566, 159 S.W.2d 367.

In Thalhofer v. Patri, 240 Wis. 404, 3 N. W.2d 761, 763, it was said: "Provisions in statutes and ordinances authorizing slight variations in the application of zoning laws are common and have generally been upheld as against the contention that such a provision is an unlawful delegation of legislative power." But in State ex rel. Tingley v. Gurda, 209 Wis. 63, 243 N.W. 317, 319, the Wisconsin court said: "However, if it be assumed that by this provision it was intended to confer upon the board of appeals power to waive exact compliance with some detail of the ordinance, it would hardly go to the extent of authorizing the board to work substantial amendments to the ordinance, or to ignore it altogether, or to accomplish its repeal."

The cases heretofore considered tend to support the contention of appellants that the provisions of § 781, Title 37, Code 1940, do not authorize a variance as to a nonconforming use.

We come now to consider the cases from other jurisdictions which do not support that view.

In several states the constitutionality of statutes and ordinances authorizing variances in practically the same language as our statute has been upheld as against the contention that they were unconstitutional as containing an unlawful delegation of legislative power to an administrative agency, without any specific reference being made to the question as to whether the power to authorize variances included the power to permit a nonconforming use. McCord et al. v. Ed Bond & Condon et al., 175 Ga. 667, 165 S.E. 590, 86 A.L.R. 703; L. & M. Investment Co. v. Cutler et. al., 125 Ohio St. 12, 180 N.E. 379, 86 A.L.R. 707; Momeier v. John McAlister, Inc., 203 S.C. 353, 27 S.E.2d 504; Spencer-Sturla Co. v. City of Memphis, 155 Tenn. 70, 290 S.W. 608. To like effect is Johnston v. Board of Supervisors of Marin County, 31 Cal.2d 66, 187 P.2d 686.

The courts of other states have held in effect that to construe the power to authorize variances to include the power to permit nonconforming uses does not result in the unconstitutionality of the "variance" provisions of the statute and ordinance, there being sufficient standards or rules set up to guide the board of adjustment or board of appeals in the exercise of its authority. Appeal of Blackstone, 8 W.W.Harr., Del., 230, 190 A. 597; Tau Alpha Holding Corp. et al. v. Board of Adjustments of City of Gainesville et al., 126 Fla. 858, 171 So. 819; Thomas et al. v. Board of Standards and Appeals of City of New York et al., 263 App.Div. 352, 33 N.Y.S.2d 219, reversed on other grounds, 290 N.Y. 109, 48 N.E.2d 284; Roosevelt Field, Inc., et al. v. Town of North Hempstead et al., 277 App.Div. 889, 98 N.Y.S.2d 350; State v. Gunderson, 198 Minn. 51, 268 N.W. 850; Freeman v. Board of Adjustment, 97 Mont. 342, 34 P.2d 534; Fortuna v. Zoning Board of Adjustment, 95 N.H. 211, 60 A.2d 133, 135, wherein is approved the holding in Vogel v. Board of Adjustment of Manchester, 92 N. H. 195, 27 A.2d 105; In re Dawson et al., 136 Okl. 113, 277 P. 226; Oklahoma City v. Harris et al., 191 Okl. 125, 126 P.2d 988;

Huebner et ux. v. Philadelphia Sav. Fund Soc. et al., 127 Pa.Super. 28, 192 A. 139; Berman et al. v. Exley et al., 355 Pa. 415, 50 A.2d 199; Application of Devereaux Foundation, Inc., 351 Pa. 478, 41 A.2d 744.

In the following cases the power of boards of adjustment or boards of appeal to authorize nonconforming uses was upheld without treatment of the constitutional question. Board of Adjustment of City and County of Denver v. Handley et al., 105 Colo. 180, 95 P.2d 823; Board of Zoning Appeals v. Moyer, 108 Ind.App. 198, 27 N.E.2d 905; State ex rel. Kreher v. Quinlan, City Engineer, et al., 182 La. 721, 162 So. 577; People ex rel. St. Basil's Church of City of Utica v. Kerner, et al., 125 Misc. 526, 211 N.Y.S. 470; Lattsco, Inc., v. Mutual Mort. & Invest. Co., Ohio Com.Pl., 6 Ohio Supp. 102, 168 A.L.R. 64, note; Bubis v. City of Nashville, 174 Tenn. 134, 124 S.W.2d 238.

Perhaps the review of the authorities from other states serves no purpose other than to answer the contention asserted by counsel for appellants to the effect that the courts of other states are in accord on the question, and to show the lack of uniformity in the holdings of the courts of other states on this aspect of the so-called Standard State Zoning Enabling Act.

We are of the opinion that § 781, Title 37, Code 1940, properly empowers the boards of adjustment to determine that in a particular situation the zoning ordinance should not be applied literally, and to that end the board should make proper adjustment to prevent unnecessary hardship, even to the extent of authorizing nonconforming uses. In order to prevent injustice, oppression, arbitrary application, and to promote "the public interest," the board of adjustment has the power to find, under a certain set of facts, that the literal application of the ordinance would not be within the spirit of the ordinance. In other words, having in mind the public interest, and the interest of the people in a given use district, the legislature intended that so long as no oppression or unnecessarily great burden exists and, therefore, no great individual injustice done, the ordinance should be applied strict-

ly; but, on the other hand, if the situation is such as to indicate oppression and unnecessary individual burden, then the spirit of the zoning ordinance would not be in accordance with the spirit of the law, that it should not be applied strictly and literally.

The power and authority to determine the existence of such a state of facts is not a delegation of legislative authority. The board of adjustment does not have the right to act arbitrarily or to amend or depart from the terms of the ordinance at its uncontrolled will and pleasure. Section 781, Title 37, supra, in so far as it relates to the power of the board to permit variances from the terms of the zoning ordinance merely delegates the power and authority, coupled with the duty to perform the function of hearing testimony, to determine if the facts are such as was intended by the legislature to entitle the property owner to a variance from the terms of the zoning ordinance. This is a quasi judicial function by an administrative board.

Variances from the terms of the zoning ordinance should be permitted only under peculiar and exceptional circumstances. Hardship alone is not sufficient. The statute says "unnecessary hardship," and mere financial loss of a kind which might be common to all of the property owners in a use district is not an "unnecessary hardship."

We come now to consider the evidence presented before the trial court upon which it was held that appellee was entitled to a variance from the terms of the zoning ordinance.

The testimony was taken orally before the trial judge and his findings on the facts had the effect of a verdict of a jury and, hence, the judgment will not be disturbed unless plainly erroneous. Hampton v. Stewart, 240 Ala. 2, 194 So. 509.

In 1938 or 1939, Donaldson, the appellee, bought a house and lot now known as 707 Federal Drive. Donaldson and his family lived in the house until 1941, when it was remodeled so as to convert it into a two-story brick veneer apartment house, containing three family dwelling units. One of the dwelling units is occupied by the Donaldson family. In 1942 or 1943 Donaldson erected garage apartments on the rear portion of this property known as 707 Federal Drive.

In 1947 Donaldson purchased, from the Montgomery Heights Company, the land, the use of which is the subject of this proceeding, and which is known as 709 Federal Drive. It is immediately north of Donaldson's property at 707 Federal Drive. It fronts 112 feet on the west side of Federal Drive and has a depth of 185 feet. Donaldson's sister and brother-in-law own the property immediately north of 709 Federal Drive. Donaldson owns property across the street.

Donaldson purchased 709 Federal Drive for the purpose of constructing thereon an apartment development. On the date of purchase there was no constitutional ordinance prohibiting the construction of an apartment, garage or otherwise, on 709 Federal Drive. But Donaldson, acting on the assumption that there was a valid ordinance of the city of Montgomery requiring the consent of the property owners for a distance of 300 feet before a garage apartment could be erected on the property, sought and obtained the consent of such owners to construct a garage apartment on the rear of his lot, 709 Federal Drive. Such an ordinance had been adopted, but it was declared unconstitutional by this court in Pentecostal Holiness Church of Montgomery v. Dunn, 248 Ala. 314, 27 So. 2d 561. Shortly after the purchase of the property and after obtaining such consent, Donaldson proceeded to construct upon the rear of the lot in question a structure with six automobile garages or "stalls" on the ground level, and two family dwelling units above the two garages in the center of the structure. The four extra garages were constructed so that there would be a garage for each family occupying the four-unit apartment which he contemplated building on the front of the lot. At the time of the building of this so-called garage apartment, Donaldson installed a paved driveway from the street and a concrete apron 32 feet wide and 80 feet long in front of the garages, at an expense of approximately

$2,000. A gas line was installed sufficient to accommodate two dwelling units on the rear of the lot and four on the front. A water line for the garage apartment units was installed and connected, and two water lines were connected to the water main and "stubbed" off at the front of the lot to accommodate the contemplated four-unit apartment building. Telephone cable was laid of sufficient size to accommodate not only the garage apartments, but the proposed four-unit apartment as well. A sewer line was laid with connections for the proposed four-unit apartment building. All of the above work was done prior to the effective date of the comprehensive zoning ordinance here involved.

After completing the building on the rear of the lot, Donaldson was unsuccessful in obtaining financing of the apartment which he contemplated building on the front. In the spring of 1948, the city planning commission of the city of Montgomery held public hearings as to the proposed comprehensive zoning ordinance. At one of the meetings Donaldson appeared and offered to present his proposed plans for the construction of the apartment on the front of his lot at 709 Federal Drive. He had obtained plans for an apartment building from a local contractor, but the bid was more than he could pay.

On April 19, 1948, Donaldson wrote the city planning commission that he was ready to build the four-unit apartment on the front of the lot and accompanied his letter with a plat of the lot and plans for the building. The planning commission of the city considered the matter and reported to the city commission that "in view of the fact that the party had started his development before the new zoning plan was developed, it is the recommendation of the planning commission that this request be granted." Donaldson continued to encounter difficulty in obtaining financial assistance and no further steps were taken toward the actual construction of the four-unit apartment building prior to November 19, 1948, when the comprehensive zoning ordinance became effective. By virtue of the said comprehensive zoning ordinance, 709 Federal Drive was placed in a residence A-1 district, wherein, as before pointed out, the construction of an apartment house is prohibited.

We are clear to the conclusion that under the evidence the trial court was fully justified in finding that appellee had suffered an unnecessary hardship sufficient to warrant the granting of a variance from the terms of the zoning ordinance. Unless appellee is permitted to construct the apartment house, he will suffer considerable financial loss, a financial loss of a kind entirely different from that of any other property owner within the same district, in that he had already incurred considerable expenditure of money in connection with the construction of the apartment house, entirely aside from any investment which he had in the lot itself. The evidence supports a finding that his property could not be advantageously used for any other purpose than the construction of the apartment house, in view of the presence on the rear of the lot of the garage apartments which, as before pointed out, were constructed before the zoning ordinance went into effect.

The evidence fully supports a finding that the spirit of the ordinance will not be violated by permitting appellee to construct the apartment house. There were in the use district multiple dwelling houses other than the garage apartment on the rear of Lot 709, Federal Drive, and the other multiple dwelling units owned by appellee on the adjoining lot. The mere fact that other multiple dwelling units are in existence in the use district would not in and of itself warrant the granting of a permit of the kind requested by appellee. But it is a factor to be considered where the evidence shows, as it does in this case, unnecessary hardship.

The evidence supports the further finding that the construction of the apartment house will not depreciate the value of other property in the use district, but in fact will add to the value of such property, in view of the fact that at the present time the garage apartments on the rear of Lot 709, Federal Drive, with their

open garages, detract from the appearance of the entire neighborhood.

The facts in this case fully justify the action of the board of adjustment and the circuit court of Montgomery County in granting a variance from the terms of the zoning ordinance under § 781, Title 37, Code 1940.

The judgment is affirmed.

Affirmed.

BROWN, FOSTER, LIVINGSTON, SIMPSON, and STAKELY, JJ., concur.