MURDOCK, Judge.
The plaintiff, Shades Mountain Plaza, L.L.C. (“Shades Mountain”), appeals from a judgment of the Jefferson Circuit Court denying its complaint seeking an order declaring a City of Hoover zoning ordinance to be contrary to § 11-52-80, Ala. Code 1975. We affirm.
Shades Mountain owns a parcel of real property within the City of Hoover (“the City”) that is zoned by the City as C-2 (Community Business District). This parcel contains a strip retail-shopping center and approximately three undeveloped acres on which Shades Mountain desires to construct a self-service “mini-warehouse” storage facility. Article VI, § 11.3, of the City’s zoning ordinance no. 00-1766 (hereinafter sometimes referred to as “the zoning ordinance”) designates self-service storage facilities as one of several “conditional uses” that may be permitted on land zoned as C-2. Article III, § 2.30 of the zoning ordinance provides that requests for conditional uses must be reviewed by the City’s Planning and Zoning Commission (“the planning commission”) and approved by the city council.
In addition to the conditional uses prescribed in Art. VI, § 11.3, Art. VI, § 11.4 of the zoning ordinance designates certain land uses as “special exceptions” that may be permitted on land zoned as C-2. Article III, § 2.40 of the zoning ordinance provides that special exceptions must be approved by the City’s Board of Zoning Adjustment (“the board”).
Without the aid of counsel, Shades Mountain applied to the planning commission for approval of the “conditional use” of its property for the construction and operation of a storage facility. That application was denied by the planning commission.
Subsequently, with the aid of counsel, Shades Mountain sought approval for the storage facility by making application to the board. The City’s zoning administrator, however, refused to accept the application because a storage facility is not one of the land uses designated in the ordinance as a “special exception” to the restrictions on land zoned as C-2.
Shades Mountain thereafter filed suit against the City and its city council members on July 18, 2001. Shades Mountain alleged that the authority to consider and approve or deny the “conditional use” for which it sought approval was specifically delegated by the Legislature in § 11-52-80 to the board. Accordingly, Shades Mountain sought a declaration that the requirement in the City’s zoning ordinance that conditional uses be reviewed by the planning commission and approved by the city council is contrary to § 11-52-80 and, therefore, void. On April 24, 2002, the trial court denied the relief requested by Shades Mountain. Shades Mountain appeals, arguing that the trial court erred in determining that the City’s zoning ordinance does not violate § 11-52-80.
Because the trial court received evidence ore tenus,
“ ‘[w]e will not disturb the trial court’s findings of fact unless those findings are plainly and palpably wrong and not supported by the evidence.’ Williams v. Lide, 628 So.2d 531, 534 (Ala.1993), citing Mitchell v. Kinney, 242 Ala. 196, 200, 5 So.2d 788, 797 (1942). However, the ore tenus rule does not extend to *832 cloak a trial judge’s conclusions of law, or incorrect application of law to the facts, with a presumption of correctness.”
Ex parte Hurricane Freddy’s, Inc., 861 So.2d 1075, 1076 (Ala.2002). Because Shades Mountain appeals a purported error of law, a presumption of correctness is not afforded to the trial court’s conclusions.
In § 11-52-70, Ala.Code 1975, the Legislature has authorized municipal corporations to engage in the zoning of real property located within their corporate limits by the municipality:
“Each municipal corporation in the State of Alabama may divide the territory within its corporate limits into business, industrial and residential zones or districts and may provide the kind, character and use of structures and improvements that may be erected or made within the several zones or districts established and may, from time to time, rearrange or alter the boundaries of such zones or districts and may also adopt such ordinances as necessary to carry into effect and make effective the provisions of this artidé.”
Section 11-52-76, Ala.Code 1975, more specifically delegates to the legislative body of each municipality the authority to exercise the aforesaid zoning authority and to implement and enforce the zoning regulations that may be adopted:
“The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced and from time to time amended, supplemented or changed and may adopt such ordinances as may be necessary to carry into effect and make effective the provisions of this article.”
Accordingly, as our Supreme Court has explained:
“It is settled law that the Alabama Legislature has delegated to municipal legislative bodies, such as city councils, the power and authority to enact zoning ordinances....
[[Image here]]
“ ‘ “Zoning is a legislative matter, and, as a general proposition, the exercise of the zoning power should not be subjected to judicial interference unless clearly necessary. In enacting or amending zoning legislation, the local authorities are vested with broad discretion, and, in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority. If there is a rational and justifiable basis for the enactment and it does not violate any state statute or positive constitutional guaranty, the wisdom of the zoning regulation is a matter exclusively for legislative determination.
“ ‘ “In accordance with these principles, it has been stated that the courts should not interfere with the exercise of the zoning power and hold a zoning enactment invalid, unless the enactment, in whole or in relation to any particular property, is shown to be clearly arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety, or welfare, or ... plainly contrary to the zoning laws.” ’ ”
American Petroleum Equip. & Constr., Inc. v. Fancher, 708 So.2d 129, 131 (Ala.1997) (quoting Homewood Citizens Ass’n v. City of Homewood, 548 So.2d 142, 143 (Ala.1989), quoting in turn 82 Am.Jur.2d Zoning and Planning § 338 (1976)).
Section 11-52-80 provides, in pertinent part:
*833 “(a) In availing itself of the powers conferred by this article, the legislative body of any incorporated city or town may provide for the appointment of a board of adjustment and, in the regulations and restrictions adopted pursuant to the authority of this article, may provide that the said board of adjustment shall in appropriate cases and subject to appropriate conditions and safeguards make special exceptions to the terms of the ordinance in harmony with its general purposes and interests and in accordance with general or specific rules therein contained.
[[Image here]]
“(b) The board shall adopt rules in accordance with the provisions of any ordinance adopted pursuant to this article....
[[Image here]]
“(d) The board of adjustment shall have the following powers:
“(1) To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto;
“(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; and
“(3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.”
(Emphasis added.) In accord with this statute, Art. Ill, § 1.1 of the zoning ordinance provides that “[t]he board of adjustment herein established shall have only those powers specifically delegated to it by the provisions of Section 11-52-80, Code of Ala.1975.”
Shades Mountain contends on appeal that the terms “special exception” and “conditional use” are synonymous and are used interchangeably in land-use law. It cites several cases from other jurisdictions and a variety of zoning and land-use treatises in support of this proposition. Indeed, this question has not been directly addressed by this court or our Supreme Court. See generally Ex parte Fairhope Bd. of Adjustment & Appeals, 567 So.2d 1353, 1355 (Ala.1990) (explaining that “[a] special exception” in general terms is a type of a “conditionally permitted use, that is, it is an enumerated use specified in the zoning ordinances that requires the approval of an administrative board or agency”). Shades Mountain essentially argues that because the terms “special exception” and “conditional use” should be considered interchangeable, and because § 11-52-80 authorizes the board “[t]o hear and decide special exceptions to the terms of the [zoning] ordinance” at issue, the zoning ordinance improperly provides that conditional-use applications must be heard by the planning commission and ultimately accepted or rejected by the city council. Such a requirement is inappropriate, according to Shades Mountain, because “[a]ny zoning ordinances which are enactr ed under [the city council’s] delegated legislative authority must be enacted pursuant to, and in substantial conformity with, the enabling act.” Swann v. Board of Zoning Adjustment of Jefferson County, 459 So.2d 896, 898 (Ala.Civ.App.1984).
As a threshold matter, we note that the terms “conditional use” and “special exception” are not used synonymously in the zoning ordinance itself. While both terms *834 refer to conditionally permitted uses in the general sense that the right of the land owner to engage in such uses is not granted as a regular use[1] by the applicable provision of the zoning ordinance, but instead is conditioned on review and approval by a governmental entity on a case-by-case basis, they are treated in the City’s zoning ordinance as two different types of conditionally permitted uses. Thus, Art. Ill, § 2.30 of the City’s zoning ordinance provides that “[rjequests for conditional uses as stipulated within the zone district regulations ... are permitted only after review by the planning and zoning commission and approval of the city council.” Article III, § 2.40, on the other hand, provides that “[rjequests for special exception uses stipulated within the zoning district regulations ... are permitted only after review and approval by the board of adjustment.”
It is also clear that under the zoning ordinance self-storage facilities are designated as conditional uses and not as special exceptions. Article VI, § 11 of the City’s zoning ordinance, the “C-2 Community Business District” section of the ordinance, lists the various types of facilities permitted in a retail business district zoned as C-2. “Permitted principal uses” of property zoned as C-2 include auto-parts stores, bakeries, grocery stores, department stores, banks, motels and hotels, all types of restaurants, and “other retail stores deemed appropriate by the city.” Under Art. VI, § 11.3, “conditional uses” of property zoned as C-2 include “[sjhop-ping centers, hospitals, nursing homes, self-service storage facilities, uses listed in section 12.2(B) of the general business district, commercial recreation and amusement facilities, and on-premise and off-premise sale of alcoholic beverages and live entertainment.” (Emphasis added.) Finally, the zoning ordinance lists only one “special-exception use” in a C-2 zone, namely “[tjelecommunications facilities.” Art. VI, § 11.4.
Because “zoning is a legislative function committed to the sound discretion of municipal legislative bodies, not to the courts,” municipal authorities “must of necessity be accorded considerable freedom to exercise discretion not diminished by judicial intrusion.” City of Birmingham v. Morris, 396 So.2d 53, 55 (Ala.1981). “[Ljocal governing authorities are presumed to have a superior opportunity to know and consider the varied and conflicting interests involved [in zoning], to balance the burdens and benefits and to consider the general welfare of the area involved.” Id. The City has chosen to treat the terms “conditional uses” and “special exceptions” differently; that choice must be presumed valid, unless it is shown to be “clearly arbitrary and unreasonable.” Swann, 459 So.2d at 898.
The language of § 11-52-80 does not mandate that a board of zoning adjustment be created by the municipality, much less that it be the only body that reviews conditionally permitted land uses. Further, as the trial court observed, § 11 — 52— 80 provides that the “legislative body” of the municipality, in this case the city council, “may provide that the said board of adjustment shall ... make special exceptions to the terms of the ordinance.” (Emphasis added.) Thus, “Alabama has not established a single forum for resolution of zoning disputes. Each city may establish zoning commissions and a board of zoning adjustment.” Nasser v. City of Home *835 wood, 671 F.2d 432, 440 (11th Cir.1982) (citing §§ 11-52-79 and 11-52-80, Ala. Code 1975).
Furthermore, § ll-52-80(d)(2) states that boards of zoning adjustment have the power “[t]o hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance .... ” (emphasis added). Consistent with the authority it derives from §§ 11-52-70, -76, and -80, the city council has elected to adopt a zoning ordinance that does not authorize or require the board to consider or approve “conditional-use” requests. Thus, even if conditional uses could in general terms be considered “special exceptions,” they are not special exceptions “upon which [the board] is required to pass under [the City’s zoning ordinance].”
Drawing on case authorities dealing with variances, Shades Mountain cites the following discussion by this court regarding the statutorily prescribed authority of boards of zoning adjustment:
“Whether a city council has the power to usurp from the Board of Adjustment its traditionally recognized power to grant a use variance in ‘unnecessary hardship’ cases has been before the courts on numerous occasions. Section ll-52-80(d), Ala.Code (1975), sets out the powers of the Board of Adjustment which includes authorization of variance from the terms of the zoning ordinance. The power and authority of the Board of Zoning Adjustment (to determine that the facts are such as was intended by the legislature to entitle a property owner to a variance from the terms of a zoning ordinance) are not a delegation of legislative authority; the Board of Zoning Adjustment sits as an administrative body performing a quasi-judicial function. Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244 (1951). And, since the Board of Adjustment derives its power directly from the state legislature, such power cannot be circumscribed, altered, or extended by the municipal governing body. Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244 (1951). Accord, Water Works Board v. Stephens, 262 Ala. 203, 78 So.2d 267 (1955). Therefore, the [Board of Adjustment], not the City Council, had the authority to authorize a variance from the zoning ordinance.”
Alabama Farm Bureau Mut. Cas. Ins. Co. v. Board of Adjustment of Hanceville, 470 So.2d 1234, 1236 (Ala.Civ.App.1985). Shades Mountain argues that the reasoning employed in Alabama Farm Bureau also applies to special-exceptions cases and that, in this case, the city council has improperly circumscribed the board’s powers by dividing special exceptions and conditional uses into separate categories and allowing conditional uses to be reviewed by the planning commission and the city council, rather than the board.
In Harris v. Jefferson County Board of Zoning Adjustment, 773 So.2d 496 (Ala.Civ.App.2000), this court noted the difference between “special exceptions” and “variances”[2]:
“ ‘Generally, a variance is a relief granted from the literal import and strict application of zoning regulations, thereby allowing property to be used in a manner otherwise forbidden by the terms of the regulations. ... On the other hand a special exception denotes a species of administrative permission which allows a property owner to use his property in a manner which the regula *836 tions expressly permit under conditions specified in the zoning regulations themselves. ... Thus, a special exception is not truly an exception to the zoning regulations at all.’ ”
773 So.2d at 498 (quoting Lindquist v. Board of Adjustment of Jefferson County, 490 So.2d 16, 17-18 (Ala.Civ.App.1986)) (emphasis added). In other words, a special exception, though it is not a regular permitted use, is a use that is expressly listed in and permitted by a set of zoning regulations, provided that it is specially approved in accordance with the procedures, and subject to the conditions, set forth in those regulations; whereas a variance is a use that is not listed in the zoning regulations, but is a relaxation of, or, literally, a “variance” from, the uses otherwise permitted by the zoning regulations.
“The distinction between a ‘special exception’ and a ‘variance’ is critical because they do not encompass the same relief and the burden upon the applicant is extremely different.” Maumenee v. Fairhope Bd. of Adjustment & Appeals, 567 So.2d 1351, 1352 (Ala.Civ.App.1989). Section 11-52-80 specifically provides the municipal legislative body with the option, if it has chosen to create a board of adjustment, of investing that board with the power to hear special-exception cases; again, the statute states that the municipal legislative body “may provide that the said board of adjustment shall ... make special exceptions to the terms of the ordinance” (emphasis added) and that the board is to hear and decide applications for special exceptions “upon which such board is required to pass under the ordinance.” Section 11-52-80 does not, in contrast, give the municipal legislative body the option of not investing in its board of adjustment the power to hear variance appeals, if it has chosen to create a board of adjustment. To the contrary, as Alabama Farm Bureau holds, § ll-52-80(d) removes that option from the municipal legislative body. The reasoning of Alabama Farm Bureau therefore is not applicable to this case.
Nonetheless, Shades Mountain argues that, because the City has chosen to create a board of zoning adjustment, the statute requires that that board be the body to consider and pass upon the “conditional uses” herein at issue because, Shades Mountain contends, such conditional uses are nothing more than “special exceptions” under § 11 — 52—80(d) (2). Admittedly, as between a “variance” and a “special exception,” the “conditional uses” prescribed by the City’s zoning ordinance are more akin to special exceptions because they are uses that are specifically listed in the ordinance, although they are not regular permitted uses. Nothing in Alabama law, however, requires that every use that is not specifically listed as a regular permitted use in a given zoning classification be deemed either a variance or a special exception. As the trial court ruled, nothing prevents a municipality from establishing two different categories of conditionally permitted uses and prescribing separate, and different, procedures to obtain the approval of each.
The Legislature has delegated to the municipality the authority to decide what kind, character, and use of structures and improvements may be erected within various zones within a municipality’s corporate limits, and it has specifically delegated to the legislative body of each municipality authority with regard to the adoption, implementation, and enforcement of zoning regulations. Nothing in § 11-52-80 prohibits the city council from taking uses that, if it were to choose to do so, it could include as regular permitted uses in a given zoning classification and attaching special conditions to their approval, including requiring them to be approved *837 on a case-by-case basis by the city council itself. That, in short, is what the city council has chosen to do with respect to the uses it has specifically designated by ordinance as “conditional uses”, in areas zoned as C-2. The city council also has taken advantage of the statutorily afforded option of creating a board of adjustment and delegating to it the right to consider and make decisions regarding certain uses that by ordinance it has chosen to designate as “special exceptions.” We conclude that the zoning ordinance of the City that embodies these choices has been “enacted pursuant to, and in substantial conformity with, the enabling act,” Swann, 459 So.2d at 898, and is not “arbitrary, capricious, or unreasonable.” Fancher, 708 So.2d at 131.
The board was correct in refusing to hear Shades Mountain’s application for a special exception on the ground that the zoning ordinance designates self-storage facilities as conditional uses, which under the ordinance are to be reviewed by the planning commission and the city council, rather than by the board. The trial court therefore did not err in denying Shades Mountain’s request for a declaration that the City’s zoning ordinance is contrary to § 11-52-80.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., concurs in the result.

. By "regular use” we refer to what the City’s zoning ordinance labels "principal permitted use,” that is, a use to which the land may be put without any special permission or any special condition other than that the land be properly zoned for that use.

. As noted, § 11 — 52—80(d)(3) grants to boards of zoning adjustment the authority to hear appeals of requests for variances.