277 So.2d 418

**Eddie McCRAY, alias**

**v.**

**STATE.**

**5 Div. 136.**

Court of Criminal Appeals of Alabama.

March 20, 1973.

Rehearing Denied May 1, 1973.

Douglas McElvy, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

Possession of marijuana: sentence, five years.

This is a renewal, without objection by the State, of the appeal heretofore dismissed in McCray v. State, 46 Ala.App. 588, 246 So.2d 475.

The incriminating marijuana was seized under a defective search warrant. The affidavit for the warrant reads as follows:

"And that the facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: I have received information from a reliable informant that he knows said Edward McCray is buying and selling illegal drugs and Marihuana, and that said informant has bought illegal drugs and Marihuana from said Edward McCray in the past. Informant has given me information in the past and has been reliable and true.

"(Signature of Affiant) /s/ Jerry Popwell

"(Official Title)       Lt. Lee County

"Sworn to before me, and subscribed in my presence, Sept. 30, 1969.

"/s/ C. S. Whittelsey (Judge)"

The quoted information is as disembodied as a poltergeist. It has no averment of where the contraband is located and equally vapidly it ignores the important unity of time. Without an anchor on a particular point in time, events within an entire life

span might afford excuses for searches. See Reynolds v. State, 46 Ala.App. 77, 238 So.2d 557.

Our Supreme Court per Merrill, J., in Davis v. State, 286 Ala. 117, 237 So.2d 640, wrote:

> "Finally, we agree with the Court of Criminal Appeals that the affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote. No date is stated in the affidavit other than the date it was signed before the judge of the county court."

See also Dean v. State, 46 Ala.App. 365, 242 So.2d 411; Windsor v. State, 122 Ga. App. 767, 178 S.E.2d 751; Bruce v. Commonwealth, (Ky.) 418 S.W.2d 645; Anno. 100 A.L.R.2d 525.

Nowhere in the instant record is there any evidence that Judge Whittelsey had any other sworn testimony which would have told him (directly or by way of hearsay) either *where* or *when* the informer saw McCray trafficking in drugs and marijuana.

Indeed, the State so presented its case as to omit calling Judge Whittelsey as a witness. Deputy Popwell was the sole witness to tell of the information he received. This officer, on cross testified as follows:

"Q Is that your name signed to the affidavit that makes up the affidavit for this search warrant?

"A Yes, sir.

"Q The facts stated in this affidavit are the facts that you presented to Judge Whittlesey in order to obtain the search warrant?

"A Not all of them, no, sir.

"Q Are there any other facts that you presented to Judge Whittlesey recorded in writing?

"A That I don't know. If Judge Whittlesey has them in writing, they are in writing.

"Q But this is all you know about, is this affidavit?

"A Yes, sir.

"Q The affidavit states, does it not, that you received information from a reliable informer?

"A It does.

"Q Who was this reliable informer?

"MR. YOUNG: We object.

"THE COURT: Sustained.

"Q Do you know who this informer is?

"A Yes, sir."

    *    \*    \*    \*    \*    \**

"Q How long in the past has this informant given the officers information?

"A Previously, approximately a week previous to this we had made a buy off of another gentleman that was involved in drugs, on information received from this informant which was identified as drugs.

"Q And that is the second time—

"A No, sir, there were five other cases besides that in the three months prior to that.

"Q And that was not, however, set out in this affidavit?

"A No, sir, it was not. It was explained to the issuing magistrate.

"Q But, to your knowledge, it was not taken down in writing and signed by you, is that correct?

"A No, sir. I don't know whether it was taken down in writing or not.

"Q You didn't sign anything except this affidavit?

"A No, sir. I signed the affidavit.

"Q This affidavit says that the informant said the Defendant, Eddie McCray was buying and selling illegal drugs, is that correct?

"A Yes, sir.

"Q   Had this informant actually purchased drugs from the defendant?

"A   He had, yes, sir.

"Q   Was this informer placed under arrest?

"A   Sir?

"Q   Was this informer placed under arrest?

"MR. YOUNG: We object.

"A   No, sir.

"Q   And this affidavit is based entirely on information from this reliable informer, is that correct?

"A   No, sir, on information from two State Narcotics Agents also.

"Q   It doesn't say anything in the affidavit about them?

"A   No, sir, I didn't put anything in the affidavit about them.

"Q   And nothing in this affidavit is of your own personal knowledge?

"A   Yes, sir.   I talked with the informant, and the informant named the gentleman. The two State Narcotics Agents were willing to give their personal observations.   I talked with the informant and questioned them, and that is what I based my affidavit on.   He had had dealings with this gentleman.   He had been assaulted at one time by this gentleman to extort money out of him.

"Q   And this is based on your conversation with them, not based on your personal knowledge?

"A   That is correct.   I was not present when the buying or the sale was made, if that is what you mean.

"Q   This affidavit doesn't say anything about buying or selling or anything else being done at 21 Drake Apartments?

"A   No, sir.

"Q   Do you know of your own personal knowledge whose apartment this is that was searched?

"A   From the standpoint of who lives there or who pays the rent?
"Q   Do you know who pays the rent?

"A   No, sir.

"THE COURT: The Court understood him to say in the beginning that it was this Defendant's apartment.   Did you say that?

"A   The Defendant lives there, but as far as paying the rent, I don't know.

"THE COURT: Well, as far as the use of the apartment, whose is it?

"A   The Defendant's and his mother's.

"Q   This is your personal knowledge that the Defendant lives there?

"A   Yes, sir.

"Q   Based on your own personal observation?

"A   Yes, sir, the Defendant was there the night before.

"Q   And you observed him there?

"A   No, sir, by his statement to me."

Thus, without any auxilary evidence we are not forced to consider the validity vel non of the latitudinarian views expressed in the first person singular by my brother Almon in Oliver v. State, 46 Ala.App. 118, 238 So.2d 916.[1]   Nor is there any such scintilla as acted as a will of the wisp for the dissenting brothers, Tyson and DeCarlo

---

1.  Poldo v. United States, 9 Cir., 55 F.2d 866; United States v. Cobb, 4 Cir., 432 F.2d 716; United States v. Anderson, 9 Cir., 453 F.2d 174; United States v. Bailey, 9 Cir., 458 F.2d 408.
    In Murry v. State, 48 Ala.App. 89, 261 So.2d 922, Tyson, J., wrote:

" * * *   The magistrate cannot rely upon other factors not set forth in the affidavit and not made known to the magistrate but which are within the personal knowledge of the complaining officer.   * * * "

in Walker v. State, 49 Ala.App. 741, 275 So.2d 724 (1973).

The judgment below is reversed and the cause remanded for trial de novo.

Reversed and remanded.

TYSON, HARRIS and DeCARLO, JJ., concur.

ALMON, J., concurs in the result.