[1] Governor Folsom was substituted in this action for Governor Guy Hunt. See Rule 43, Ala. R. App. P.
These appeals deal with the constitutionality of Alabama Code 1975, § 41-4-90, which provides for a procedure commonly known as "proration," whereby the Governor of Alabama is authorized to restrict allotments of some appropriations of State government "to prevent an overdraft or deficit in any fiscal year." The Governor appeals from the Montgomery Circuit Court's judgment declaring § 41-4-90 unconstitutional. We affirm in part, reverse in part, and render a judgment.
In a memorandum dated January 14, 1992, Governor Guy Hunt issued a proration order, pursuant to § 41-4-90, declaring a 5% proration of all General Fund appropriations to State agencies and departments. This memorandum was issued after the certification to him by James H. Rowell, acting director of finance, that General Fund revenues would be insufficient to pay appropriations and upon Rowell's recommendation that proration be set at the rate of 5%, effective for *Page 892 
all State departments and agencies receiving General Fund revenues.
William J. Wynn, a judge of the Jefferson Circuit Court, filed a complaint in the Montgomery Circuit Court for a declaratory judgment and injunctive relief against Governor Hunt.[2] The complaint, filed pursuant to § 6-6-220 et seq., sought a declaration that the Governor may not apply § 41-4-90, Code of Alabama 1975, to restrict the allotments of appropriations to the Judicial Branch of Alabama government and sought an injunction barring the implementation of proration in the Judicial Branch. The complaint was amended to add, as additional plaintiffs, Terri L. Lewis, Lee W. Reeder, Charles R. Bass, Richard Shinbaum, and the Montgomery County Commission.
The plaintiffs' complaint alleged that if § 41-4-90 is interpreted to empower the Governor to declare proration with respect to the Judiciary, it is unconstitutional under the Alabama Constitution of 1901, as amended, as violating the separation of powers provided in Article III, § 43, and the autonomy of the Judiciary provided in Article VI by Amendment No. 328 of the Constitution (the Judicial Article). The complaint also alleged that § 41-4-90 is unconstitutional as a delegation to the Governor of the Legislature's exclusive power and duty of making appropriations. The complaint further alleged that, under the holding in Abramson v. Hard, 229 Ala. 2,155 So. 590 (1934), and the Budget and Financial Control Act of 1932, the original source of § 41-4-90 et seq., the Alabama Judiciary is not subject to proration by the Governor.
The case was heard by Judge Charles Price, who entered a final judgment holding § 41-4-90 unconstitutional and enjoining the Governor from prorating the budget of the Judiciary (the injunction was stayed pending appeal). Judge Price held as follows:
 "At issue is the 'proration' statute, Ala. Code § 41-4-90 (1975). Via this statute, the Legislature has delegated to the Executive the authority to decide whether and when to declare proration; the amount or degree of proration; and exactly how to distribute proration in order to avoid 'discrimination.' The precise question is whether this delegation violates Section 43 of the Alabama Constitution of 1901, which provides that 'the executive shall never exercise the legislative and judicial powers or either of them.'
 "The parties agree that the test is 'whether [the] statute constitutes an unlawful delegation of legislative power or merely a power to administer and execute the declared policy of the legislative body within reasonably clear standards fixed by the statute.' Nelson v. Donaldson, 255 Ala. 76, 81, 50 So.2d 244 (1951). See, for example, Jetton v. Sanders, 49 Ala. App. 669, 275 So.2d 349
(1973), holding that the Governor could not reduce the fee schedule for paying indigent defense lawyers. . . .
 "Because § 41-4-90 attempts to delegate the primary function of the Legislature (the 'power of the purse'), this Court finds that § 41-4-90
includes an insufficient limitation of powers. Under § 41-4-90, the Governor is not performing mere ministerial tasks, but exercises wide policy and discretionary judgments. 'The authority to determine the amount of appropriations necessary for the performance of the essential function of government is vested fully and exclusively in the legislature.' Morgan County Commission v. Powell, 292 Ala. 300, 306, 293 So.2d 830 (1974). Therefore, § 41-4-90 violates Sections 42 and 43 of the Constitution, the separation of powers doctrine. To grant the Governor such sweeping power would circumvent the historical significance of the aforestated doctrine.
 "Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla. 1991), is directly on point. . . .
"III
 "In the alternative, this Court finds § 41-4-90
is unconstitutional to the extent it might apply to the co-equal branches of *Page 893 
government, the Legislative and the Judiciary. In other words, even if the Governor is given clear enough standards in § 41-4-90, the Governor may not 'prorate' the Legislature or the Judiciary. Section 41-4-90 speaks of 'the various departments, boards, [bureaus, commissions, agencies, offices and institutions of the state'].
 "Again, the Chiles case is on point: 'The inclusion of the judicial branch within the definition of "state agency," and hence the placing of the judiciary's fiscal affairs under the management of the executive branch, disregards the constitutional mandate of coordinate power-sharing. . . .'
"IV
 "Note that § 6.10 of the Judicial article also provides that, 'Adequate and reasonable financing for the entire unified judicial system shall be provided. Adequate and reasonable appropriations shall be made by the legislature. . . .' . . . This Court also notes that former Chief Justice Howell Heflin believed that the Judicial Article grants the Judiciary the responsibility to order 'reasonable and adequate' funding in the 'unlikely event' that 'the Legislature should be remiss in complying with its constitutional mandate.' Morgan County Commission v. Powell, 292 Ala. 300, 326, 293 So.2d 830 (1974) (Heflin, C.J., dissenting)."
Thus, Judge Price entered a judgment declaring § 41-4-90
unconstitutional. He held that on its face it was unconstitutional as an unlawful delegation of legislative power and held that it violated the Constitution in that it did not sufficiently limit the Governor's discretion in imposing proration on appropriations for the funding of the various state entities described in the statute — i.e., that § 41-4-90
violated Ala. Const. Art. III, §§ 42 and 43, in conferring the "power of the purse" improperly on the Governor.
Alternatively, but also under the doctrine of separation of powers, Judge Price held § 41-4-90 unconstitutional in its application to the Judiciary, holding that funding of the Judicial Branch may not be prorated. We consider these alternative holdings in this appeal.
We begin our consideration of the constitutionality of §41-4-90 with a presumption in favor of its constitutionality.Comer v. City of Mobile, 337 So.2d 742 (Ala. 1976); Norton v.Lusk, 248 Ala. 110, 26 So.2d 849 (1946). We recognize, as the Court did in the only other case to consider the validity of §41-4-90, Abramson v. Hard, supra, that it is our duty to construe § 41-4-90 so as to uphold it and to effectuate the intent of the Legislature, if such a construction is possible.229 Ala. at 6, 155 So. at 593.
The essential history and purpose of § 41-4-90 are detailed in Abramson, supra. The act from which § 41-4-90 was derived was enacted when deficits in State Government threatened the solvency of the State, and it was enacted to provide a means of complying with the mandate of Ala. Const., Art. IV, § 72, and Amend. 26 that the State pay no money "unless there is in the hand of [the State] treasurer money appropriated and available for the full payment of the same." Indeed, § 41-4-90 has already been construed in the context of a variety of constitutional, historical, and statutory provisions. The Court in Abramson set out the references for its review of § 41-4-90
as follows:
 "The court accordingly is entitled to look, in its effort to arrive at the intention of the Legislature, to other provisions of the same act, to consider its relation to other statutory and constitutional requirements, to view its history and the purposes sought to be accomplished thereby, and critically to examine the results that will flow from giving the language in question the meaning it might have if none of these things were considered."
Abramson, supra, 229 Ala. at 7, 155 So. at 594.
The Court in Abramson upheld the statute by refusing to give the language of the statute its literal meaning. Under theAbramson Court's analysis, the Legislature's intent in using the term "all appropriations" was to require proration of only those appropriations that were not constitutionally mandated or otherwise excepted or specified as fully payable in accompanying statutes. The *Page 894 
Court held that § 41-4-90 can validly apply only to appropriations that are not required by the Constitution to be fully paid. The Court in Abramson stated:
 "Again, there are appropriations made pursuant to constitutional requirement which just as manifestly were not intended to be, and which in fact could not be, prorated, but the full amount of which, by express constitutional provision, must be appropriated by the Legislature to the purposes specified in the Constitution. . . .
 "Other parts of the same act and other parts of our fundamental law, therefore, show that the language relied on cannot be given the broad meaning it might otherwise have, and cannot be held to mean all appropriations of every kind and character shall be subject to allotment and proration; nor are we confined in arriving at the true meaning of the Legislature to the literal meaning of the words used."
229 Ala. at 6, 155 So. at 593. (Emphasis in the original.)
Although the Court in Abramson discussed "essential government functions" and interpreted the proration statute (now at § 41-4-90) within the context of the Budget Act applicable at that time to mean that various other "fixed" expenses were not subject to allotment and proration, the critical application of Abramson to the present case is in its holding that proration under § 41-4-90 does not affect appropriations or allotments that are made pursuant to "express constitutional provision" or excepted or otherwise specified by statute as being fully payable.
The proration statute (now codified at § 41-4-90), as construed by Abramson, has, for nearly 60 years, governed the reduction of the budgets of the Judicial Branch when State receipts have fallen below State revenue projections. On those occasions when proration has become necessary, Abramson has served as a guideline for determining how proration would affect the budgets of various State entities, including the Judiciary.[3]
The trial court's initial recognition that the doctrine of separation of powers applies to this case was correct. It is settled law that the Legislature may not constitutionally delegate its powers, whether the general power to make law or the powers encompassed within that general power, including the "power of the purse" — the power to make appropriations. Caglev. Qualified Electors of Winston County, 470 So.2d 1208
(Ala. 1985); Nelson v. Donaldson, 255 Ala. 76, 50 So.2d 244
(1951); Norton v. Lusk, 248 Ala. 110, 26 So.2d 849 (1946); andOpinion of the Justices No. 64, 244 Ala. 386, 13 So.2d 674
(1943). However, the doctrine of separation of powers does not prohibit the Legislature's delegating the power to execute and administer the laws, so long as the delegation carries reasonably clear standards governing the execution and administration. Nelson v. Donaldson, 248 Ala. at 122,26 So.2d at 849; Heck v. Hall, 238 Ala. 274, 190 So. 280 (1939).
The trial court held that the language of § 41-4-90 did not sufficiently limit the Governor's discretion in imposing proration on appropriations for the funding of the various State entities described in the statute, and, because it did not, the court held that the statute was an unconstitutional delegation of the Legislature's function. In so holding, the trial court found the Florida case Chiles v. Children A, B, C,D, E, and F, 589 So.2d 260 (Fla. 1991), persuasive. The Florida statute considered in Chiles gave the Governor and the Administration Commission absolute discretion to reduce and even eliminate all or part of the appropriations to state agencies, including the judicial branch. Id. at 265-66.
Section 41-4-90, properly applied, does not vest in the Governor such discretion. As the Abramson Court held, despite its broad language the statute does not authorize the Governor to reduce all legislative appropriations. The Legislature cannot delegate such authority to him. To salvage any *Page 895 
constitutional application of the statute, it was construed as being inapplicable to certain appropriations. The Florida statute did not permit such a limiting construction and, for that reason, the Florida Supreme Court was compelled to hold that it violated the Florida Constitution. Because § 41-4-90
permits a construction that comports with the Constitution, we reverse the trial court's judgment to the extent that it held §41-4-90 violated the constitutional provision giving the exclusive appropriations power to the Legislature.
In accord with the Abramson construction of § 41-4-90
disallowing proration of constitutionally mandated appropriations, we hold that § 41-4-90 is not an unconstitutional delegation of the "power of the purse" from the Legislature to the Governor. In so holding, we recognize the vital constitutional purpose of § 41-4-90 in maintaining a balanced State budget and preventing deficit spending in our State. In holding that § 41-4-90 is not on its face unconstitutional, we emphasize that the validity of § 41-4-90
rests on the interpretation, first set out in Abramson, that the Legislature did not intend that the statute apply — and that the statute therefore does not apply — to constitutionally mandated appropriations or to appropriations otherwise excepted or specified by statute as being fully payable.
In light of general State and Federal constitutional requirements and the specific provisions of Ala. Const., Amend. 328, our interpretation means that § 41-4-90 cannot constitutionally apply to reduce appropriations to the Judicial Branch below that level necessary for the Judicial Branch to perform the duties required of it under Federal and State constitutional law. This rationale is equally applicable to the other separate, independent, and co-equal branches of government. That is, proration could not apply to reduce funding for either the Legislative Branch or the Executive Branch to such a level that it is unable to provide the services constitutionally required of it. With respect to the Judicial Branch, funding cannot be reduced below what is "adequate and reasonable," Ala. Const., Amend. 328, § 6.10, for the performance of those duties that are constitutionally required of the Judiciary. The trial court correctly recognized the dictates of § 6.10 of the Judicial Article as requiring adequate and reasonable financing for the entire Unified Judicial System.
The general language of § 41-4-90, "any department, board, bureau, commission, agency, office or institution," cannot constitutionally be construed to include the Judicial Branch, which is a separate, independent, and co-equal branch of government. However, we must determine whether the statute can be read to include the Judiciary to some extent, as Abramson
did, even though the Abramson Court excluded the Judiciary in the context of constitutionally mandated functions or functions otherwise excepted or specified by statute. Aside fromAbramson, however, our paramount concern is the underlying constitutional purpose of § 41-4-90. Section 41-4-90 is the Legislature's response to the dictates of Ala. Const., Art. IV, § 72, and Amend. 26, to prevent annual government spending from exceeding the State's annual resources. The Judicial Branch, like the Executive and Legislative Branches, is ultimately subject to the practical availability of those resources. Accordingly, we hold that the Judiciary, even as a separate, independent, and co-equal branch of government, is within the constitutional scope of § 41-4-90, as construed in Abramson and in this opinion.
While we read § 41-4-90 broadly enough in this instance to encompass an entire branch of government, we recognize that the words "department" and "agency" normally do not include one of the three separate and co-equal branches of government. The word "department" in a constitutional amendment excluding from a referendum laws appropriating money for departments, boards, etc., has been held not to encompass the "three grand departments of government" but rather to refer to executive and administrative departments. Yont v. Secretary of theCommonwealth, 275 Mass. 365, 176 N.E. 1, 2 (1931). We note that in statutes not directly derived from the Constitution, our Legislature has distinguished the three separate and co-equal branches of government from subordinate "agencies" or "departments." For example, *Page 896 
in the Budget Management Act of 1976, the Legislature is specifically included within the definition of "agency" or "department":
 "For the purposes of this chapter, the term 'agency/department' shall include state agencies, departments, boards, bureaus, the legislature and institutions of the state."
Ala. Code 1975, § 41-19-2. (Emphasis added.) The clear implication is that the Legislature would not have specifically included itself "for the purposes of this chapter" within the definition of "agency" or "department" unless it would not otherwise fit within that definition. "It cannot be presumed that the legislature has used language without any meaning or applications." Robinson v. State, 361 So.2d 1113, 1114
(Ala. 1978) (citing Fletcher v. Tuscaloosa Federal Savings Loan Ass'n, 294 Ala. 173, 314 So.2d 51 (1975)).
As recognized by the Court in Abramson, the Governor's application of § 41-4-90 is subject to constitutional restriction. That is, the Governor may not apply proration under § 41-4-90 to reduce appropriations to the Judicial Branch below what is adequate and reasonable for the judiciary to perform its constitutionally mandated duties. In the case before us, the Governor sought, by order of January 14, 1992, to declare a 5% general fund proration under § 41-4-90 after he had determined that there would be a shortfall in revenue. The Governor departed from the practice observed by past administrations, under which representatives of the Executive Branch conferred with representatives of the Judicial Branch to reach an agreement as to what was and what was not subject to proration under the Constitution and the Abramson guidelines. Because the Governor attempted to apply proration under §41-4-90 to the judicial budget, without considering whether the remaining appropriations were adequate and reasonable to allow the Judiciary to perform its constitutionally mandated duties, the Governor's application of § 41-4-90 was unconstitutional. The language "without discrimination" used in § 41-4-90
necessarily applies only to appropriations within the operation of the statute.
The Federal and State Constitutions, which dictate the duty and function of each branch of government, including the judiciary, are the ultimate authority concerning the resources available to perform those functions.
 " 'The Constitution of Alabama, like that of the nation and of the other states, is the supreme law within the realm and sphere of its authority. Subject only to the restraints resulting from the Constitution of the United States, the Constitution of Alabama is the highest form and expression of law that exists in the state.' "
Gafford v. Pemberton, 409 So.2d 1367, 1374 (Ala. 1982) (quotingJohnson v. Craft, 205 Ala. 386, 393, 87 So. 375, 380 (1921)). This principle, that constitutional directions, first from the United States Constitution and then from the Constitution of Alabama, take precedence over legislative proscriptions and affect how those proscriptions apply, is critical to the constitutional application of § 41-4-90. The Court in Abramson
correctly recognized that constitutional provisions prevailed over legislative proscriptions and so construed § 41-4-90, and it noted several constitutionally mandated appropriations that could not be subject to proration, including compensation of members of the Legislature, salaries of constitutionally designated executive officers, the school fund, and salaries of judges. Id., 229 Ala. at 6, 155 So. at 593. Even the Governor's briefs filed in this Court acknowledge that expenses related to judicial salaries, such as Social Security and retirement payments, are constitutionally exempt from proration under the rationale of Abramson. Moreover, the Abramson Court listed as examples numerous expenses involved in the delivery of "essential" (i.e., constitutionally mandated) governmental services that would also be exempted from proration, including utility service, postage, publication expenses, premiums on bond payments, communications services, and interest payments on public debt. The Court noted, further, that expenses of a similar nature would also be exempted. *Page 897 
Since the decision in Abramson, the constitutional burdens on the courts have increased with the population and the development of new law; technologies now essential for the delivery of judicial services have also developed. We recognize that, under the rationale of Abramson and the specific constitutional provisions applicable to the Judiciary, appropriations for the costs of administrative support essential to the delivery of constitutionally mandated judicial services may also not be reduced by proration below an adequate and reasonable level.
In considering the application of proration under § 41-4-90
and present constitutional law to the Judiciary, we note some of the many duties that the courts of this State are constitutionally required to provide to our citizens. Such constitutionally mandated duties require allocation of sufficient resources for administration and complete delivery of judicial services to the people served by the courts.
The Judiciary is a separate, independent, and co-equal branch of government, and the United States Constitution and the Constitution of Alabama describe its duties at some length. Cases from the United States Supreme Court and cases from this Court have further defined those services that are constitutionally required of the Judiciary for the benefit of the people. Without attempting to list every specific duty that is constitutionally required of the Judiciary, we note that the courts are, in many respects, the means by which the people of this nation assure their most fundamental individual rights. The courts are the forum where the guarantees set out in the Bill of Rights, Amendments I-X, to the United States Constitution, and in the Declaration of Rights of the Constitution of Alabama, Art. I, §§ 1-36, gain meaning and limit governmental power.
For example, the right of the individual to be free of unreasonable search and seizure, U.S. Const. Amend. IV, Ala.Const. Art. I, § 5, absolutely requires the action of a judicial officer in assessing the probable cause for the issuance of a warrant for search or arrest. Crittenden v.State, 476 So.2d 626 (Ala.Crim.App.), affirmed, 476 So.2d 632
(Ala. 1985). Of note is our settled law that "stale" or untimely information, execution, or judicial review may invalidate a warrant. See, McCray v. State, 50 Ala. App. 143, 277 So.2d 418
(1973). Similarly, the Courts must oversee all aspects of criminal proceedings. One of the courts' constitutional requirements in this regard is that the courts must ensure due process of law, process for obtaining and confronting witnesses, rights against self incrimination, and a speedy
public trial before a jury. U.S. Const., Amendments V-VIII,Ala. Const. Art. I, §§ 6-9. As in regard to the requirements governing warrants, a lack of, or a delay in, judicial participation often means actual elimination of the constitutionally required service. For example, the right to a speedy trial means that delay may invalidate criminal proceedings. McCallum v. State, 407 So.2d 865
(Ala.Crim.App. 1981). Further, State and Federal rules require judicial review within 48 hours of arrest for suspects arrested and jailed without warrants and require bond hearings within 72 hours for those arrested and jailed with a warrant.Ala.R.Crim.P. 4.3. Failure to meet these deadlines may require release of the suspect and could invalidate any further criminal proceeding. See Gerstein v. Pugh, 420 U.S. 103,95 S.Ct. 854, 43 L.Ed.2d 54 (1975).
Many requirements imposed on the Judiciary for timely delivery of judicial services ultimately stem from Federal and State constitutional provisions. For example, juvenile court work reports must be presented, as required by the administrative director of courts, before the 10th day of each month, § 12-15-3(b), Ala. Code 1975, Rule 7, A.R.Juv.P.; hearings pertaining to child support are subject to many explicit time limitations, Title IV-D of the 1984 Amendments to the Social Security Act, Public Law 98-378,[4] *Page 898 
and Rule 35, A.R.Jud.Admin.; preliminary hearings in criminal cases must be held within 21 days of demand, Rule 5.1, A.R.Crim.P.; reports of divorces must be filed with the State Board of Health within the first 5 days of each month, Ala. Code 1975, § 22-9-5; upon appeal de novo from the district or municipal court to the circuit court, records must be transmitted within 14 days, Rule 30.4, A.R.Crim.P.; and Rule 11, A.R.App.P., sets specific time limits for completing and filing transcripts and records in all appeals. All the courts within the Unified Judicial System operate under time standards governing the disposition of the cases before them. See, e.g., materials under the heading Delay Reduction and CaseManagement, Ala. Code 1975, Volume 23A at 507 (1990). This Court recognizes that implicit in the Judiciary's constitutional requirement to render services is the requirement that those services be delivered in a timely manner. As often observed, justice delayed is justice denied.
The Alabama Constitution also requires the delivery of judicial services in civil proceedings. Each person in this State has, along with many other enumerated rights, a constitutionally guaranteed right to a forum for the enforcement of his or her contracts, Ala. Const. Art. I, § 22; a right to prosecute a civil cause, Ala. Const. Art. I, § 10; and a right to a jury trial, Ala. Const. Art. I, § 11. Federal constitutional requirements also directly require the delivery of similar services by the courts of this State.
The right to a timely civil jury trial, for example, is especially important to American jurisprudence, and that right is constitutionally guaranteed by both our Federal and State Constitutions. Under the appropriate circumstances, Federal courts have held that the Seventh Amendment to the United States Constitution means that in the Federal courts citizens may not be deprived of this essential right by financial considerations. In Armster v. United States District Court,792 F.2d 1423 (9th Cir. 1986), the court reviewed the efficacy of a blanket three and one-half month moratorium on civil jury trials due to an alleged insufficiency of funds. The court began by noting the importance of civil jury trials:
 " 'The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen . . . should be jealously guarded by the courts.' "
792 F.2d at 1428 (quoting Jacob v. New York, 315 U.S. 752,752-53, 62 S.Ct. 854, 54, 86 L.Ed. 1166 (1942). After considering "the relationship between constitutional rights and the public fisc," 792 F.2d at 1429, the court concluded:
 "The constitutional mandate that federal courts provide civil litigants with a system of civil jury trials is clear. There is no price tag on the continued existence of that system, or on any other constitutionally provided right.
". . . .
 "We conclude that the civil jury trial system may not be suspended for lack of funds. Specifically, we conclude that the seventh amendment right to a civil jury trial is violated when, because of such a suspension, an individual is not afforded, for any significant period of time, a jury trial he would otherwise receive."
Id. at 1429-30. Although we recognize that the right to a jury trial in our State courts is guaranteed by our State Constitution, while Armster was based on the Seventh Amendment to the United States Constitution, and although we recognize that perhaps not every delay will amount to a denial of a constitutional right, the rationale in Armster does underscore the weight that must be accorded the timely delivery of constitutional rights in light of the scarcity of funding and resources.
The various rights vested in our citizens by the State and Federal Constitutions require that the Judiciary have adequate and reasonable resources available for it to serve as the forum for the enforcement of those rights. Moreover, the Alabama Constitution specifically requires the courts to be open and to be the avenue through which every person in this State may seek a remedy for an injury. *Page 899 Ala. Const. Art. I, § 13. The constitutional duty of the courts in this State is that they be available for the delivery of justice, and they are constitutionally required to deliver justice with due process of law. Absent adequate and reasonable judicial resources, the people of our State are denied their constitutional rights.
Most jurisdictions, on a similar review of the duties constitutionally required of the Judiciary, have held that the Judiciary, as a separate, independent, and co-equal branch of government, has the inherent power to assure itself sufficient funding to perform its duties. See, e.g., County of Barnstablev. Commonwealth, 410 Mass. 326, 572 N.E.2d 548 (1991); Chilesv. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla. 1991); Inre Alamance County Court Facilities, 329 N.C. 84,405 S.E.2d 125 (1991); Abbott v. Spencer, 790 S.W.2d 171, 302 Ark. 396
(1990); Mays v. Fifth Court of Appeals, 755 S.W.2d 78 (Tex. 1988); Grimsley v. Twiggs County, 249 Ga. 632, 292 S.E.2d 675
(1982); In re Salary of Juvenile Director, 87 Wn.2d 232,552 P.2d 163 (1976); Robinson v. Cahill, 67 N.J. 333, 339 A.2d 193
(1975); Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45,274 A.2d 193, cert. denied, 402 U.S. 974, 91 S.Ct. 1665,29 L.Ed.2d 138 (1971); Millholen v. Riley, 211 Cal. 29, 293 P. 69 (1930); and Moynahan v. City of New York, 205 N.Y. 181, 98 N.E. 482
(1912).
The foregoing cases, and many others of similar rationale, hold that the inherent power of the Judiciary to assure adequate funding stems from two basic factors: (1) the position of the Judiciary as a separate and co-equal branch of government, and (2) the fact that essential services are required of the Judiciary on behalf of every person by the constitution of each jurisdiction. Chief Justice Heflin described the inherent power of the Judiciary to continue its constitutional function:
 "The concept of inherent power is not some device created by a power-hungry judiciary, but is a doctrine that is concomitant to the very structure of our tripartite form of government. If the judicial system is to be a truly co-equal and independent branch answerable only to the sovereign — the people — than it must have the power to maintain itself under exigent circumstances. Certainly in the usual situation it is not necessary for courts to exercise any extraordinary power since the other great branches of government are also charged with the constitutional duty to provide for an effective judiciary. It is only when the other branches are remiss in their constitutional duties that the court must act to preserve the efficient administration of justice."
Morgan County Commission v. Powell, 292 Ala. 300, 319,293 So.2d 830, 847 (1974) (Heflin, C.J., dissenting).
Chief Justice Helfin's rationale, coupled with the analysis of many other jurisdictions and case law from this State, see, e.g., Ex Parte Huguley Water System, 282 Ala. 633,213 So.2d 799 (1968), and Ex Parte Wetzel, 243 Ala. 130, 8 So.2d 824
(1942), would be sufficient to warrant our holding in this case. As Chief Justice Heflin said, the doctrine of inherent power "is a fundamental element of the jurisprudence of this nation." 292 Ala. at 321, 293 So.2d at 849.
Aside from the inherent power in the Judiciary to assure sufficient resources to continue its function, our Constitution expressly requires Legislative appropriation of such resources:
 "Adequate and reasonable financing for the entire unified judicial system shall be provided. Adequate and reasonable appropriations shall be made by the legislature for the entire unified judicial system, exclusive of probate courts and municipal courts. The legislature shall receive recommendations for appropriations for the trial courts from the administrative director of courts and for the appellate courts from each such court."
Ala. Const., Amend. 328, § 6.10. We note with approval Chief Justice Heflin's discussion of this provision in his dissent inMorgan County Commission, supra:
 "The constitutional mandate 'adequate and reasonable financing' in [§ 6.10, quoted above] is more expansive than the clause 'adequate and reasonable appropriations' and there is no limitation of this responsibility to a specific branch following *Page 900 
the clause 'shall be provided'. . . . Further, it seems clear that adequate and reasonable financing of the court system of this state is a constitutional priority for nowhere else in the Constitution do the words 'adequate and reasonable' appear in relationship to financing and appropriations."
292 Ala. at 326, 293 So.2d at 854-55. (Heflin, C.J., dissenting; emphasis in the original; footnote omitted.) Not only is the Legislature required to make adequate and reasonable appropriations for the entire judicial system under § 6.10; all three branches are charged with a constitutional duty to ensure adequate and reasonable financing for the Judiciary. Plainly, the constitutional requirement of reasonable and adequate financing encompasses the various administrative costs, including equipment and personnel, necessary to deliver constitutionally mandated judicial services. At a constitutional minimum, therefore, appropriations to the Judiciary may not be reduced by operation of § 41-4-90 or any other enactment to such a level that the Judiciary is not adequately and reasonably funded for the performance of its constitutionally mandated obligations.
This Court has addressed the terms "adequate and reasonable" within the context of funding in Sparks v. Parker,368 So.2d 528 (Ala. 1979). Sparks considered that language in the context of a challenge to the scheme for compensating attorneys for indigent defense work. However, the Court in Sparks, citingMorgan County Commission v. Powell, 292 Ala. 300, 293 So.2d 830
(1974), discussed the doctrine of separation of powers and its relation to judicial funding. Like the Court in Abramson before it, the Sparks Court deferred to the Legislature's power to appropriate, while recognizing the Court's duty to construe constitutional and statutory language:
 "It is therefore not within the sphere of the judicial branch to determine what appropriations are to be made although, of course, it would be within our purview to determine if the appropriations made are 'adequate and reasonable' for the unified judicial system. . . ."
368 So.2d at 531.
At a constitutional minimum, the term "adequate and reasonable" means that the Judicial Branch of government must be funded sufficiently to fulfill the duties required of it by the Constitution. Thus, "adequate and reasonable" funding for services constitutionally required of the Judiciary is the level of funding beneath which § 41-4-90 cannot apply to reduce funding. This Court recognizes, however, that even as the Judiciary is one of the three separate branches of government, it is also a part of government, and as a part of government, the Judiciary must cooperate in every way possible with the Legislature as it performs its difficult task of allocating limited resources.
It follows that § 41-4-90 does have a field of operation above the "floor" of "adequate and reasonable" funding for constitutional services. Therefore, the Governor's application of § 41-4-90 can reduce appropriations available to the Judiciary if the reduction does not affect services constitutionally required of the courts, i.e., if the reduction does not reduce funding for constitutionally required services below an adequate and reasonable level. For example, proration may not be applied to deny persons in Alabama timely access to a jury trial. However, proration might apply to limit programs or services within the Judiciary that, although needed and desirable, are not constitutionally mandated.
Whenever proration under § 41-4-90 becomes necessary, the Governor and the appropriate executive agencies shall request a redetermination of the judicial budget from the administrative head of the judicial system, the Chief Justice of this Court. Pursuant to that request, the Chief Justice shall obtain, from the administrative director of courts and from the appropriate personnel with each of the appellate courts and other particularly funded entities within the Judicial Branch, a new determination of their court or entity's portion of the judicial appropriations. This new determination of the portions of the appropriations dedicated to separately funded judicial entities shall set *Page 901 
out the amounts adequate and reasonable for the delivery of the constitutionally required duties of each separately funded judicial entity. That is, the Chief Justice shall require each budget-making entity within the Judicial Branch to distinguish between appropriations adequate and reasonable for the constitutionally mandated services it delivers and all other appropriations.
The Chief Justice shall then submit the redetermined amounts from each separately funded entity within the judicial branch, showing the amount of appropriations required for adequate and reasonable funding of the Judiciary's constitutional duties, to the Governor, pursuant to § 41-4-90. After the appropriations necessary for adequate and reasonable funding of the constitutional duties of the Judiciary are excluded, the Governor may apply proration, pursuant to § 41-4-90, to all remaining appropriations available to the Judiciary.
In this case, the Governor sought to apply a 5% proration without a consideration of the constitutional requirements of the Judicial Branch; historically such a consideration has been used, in light of Abramson. Even after deducting expenses that the Governor acknowledged were constitutionally exempt from proration, the financial impact was to reduce the initial judicial appropriation of $85.4 million to $81.3 million.
The reduction brought about by proration of the Judiciary's appropriations was proportionately much larger than that faced by the other branches of government because a high percentage of the judicial budget is derived from the General Fund, the fund most affected by proration. The following list gives examples of departments or agencies upon which the effect of the proration of the General Fund is relatively minimal:
 Department or Agency General Fund Earmarked Funds A.B.C. Board 0 $ 40,000,000 Commission on Aging $ 4,550,329 $ 24,178,817 Conservation $ 978,096 $ 55,811,504 Economic Community Affairs $ 8,172,420 $154,260,846 Environmental Management $ 6,554,469 $ 53,077,665 Public Health $32,623,251 $210,397,593 Human Resources $40,000,000 $376,051,713 Revenue $ 368,451 $ 67,443,161
In contrast, the Judiciary and those departments that derive a majority of their appropriations from the General Fund have a greater adverse impact from proration. The total budget for the Judicial Branch for fiscal year 1991-92 contained $ 85,492,577 appropriated from the General Fund, but only $ 754,349 from earmarked funds. These examples from fiscal year 1991-92 further illustrate the problem:
 Department or Agency General Fund Earmarked Funds Corrections $137,641,102 $25,966,844 Finance $ 9,058,941 $ 172,193 Pardons and Paroles $ 11,999,693 $ 3,447,108 Public Safety $ 49,100,605 $ 8,410,747 Soil and Water Conserv. $ 1,271,209 $ 183,050
 Had the proration sought by the Governor been implemented against the Judiciary's budget, significant numbers of court personnel would have been laid off, trial court operations would have been suspended in some situations, and various other impediments to the delivery of justice would have resulted. Because salaries and fixed expenses required by the operation of the trial courts represent a large portion of the judicial budget, this reduction would have drastically affected the funds used by the courts for their operations. *Page 902 
In such circumstances, the Governor's position on the question of whether proration affected the delivery of constitutionally mandated judicial services would be extremely difficult to support, even if the Governor had attempted to follow the principles in Abramson. However, this Court takes judicial notice that, after the trial court entered its judgment in this case, the Legislature passed Act 92-227, Ala. Acts 1992, providing additional appropriations to the Judicial Branch. The additional appropriation in Act 92-227 restored some $3.2 million to the Judicial Branch appropriations, leaving a net loss in appropriations of some $1.6 million; that net loss caused the termination or postponement of many needed and desirable programs within the courts, but the Legislature's additional appropriation in Act 92-227 enabled the courts to avoid employee layoffs and to remain open to the public. This timely action by the Legislature permitted the people continued access to our courts and relieved this Court from having to make a more difficult determination.
This Court, taking notice of all the appropriations actually available to the Judicial Branch for the year in question, 1991-92, holds that those appropriations were adequate and reasonable for the completion of the Court's constitutionally mandated duties for that year.
The Governor's attempted application of § 41-4-90 to the Judicial Branch without the constitutional constraints discussed herein was unconstitutional, and we affirm the trial court's judgment so holding. We acknowledge that the passage of Act 92-227 has relieved this Court from further review of what the Governor should have determined under § 41-4-90.
Accordingly, the trial court's order declaring Ala. Code 1975, § 41-4-90, unconstitutional, is affirmed in part and reversed in part, and a judgment is rendered declaring the effect of §41-4-90 on appropriations to the Judiciary.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED.
ALMON, SHORES, HOUSTON, STEAGALL, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in the result.
HORNSBY, C.J., and KENNEDY, J., recused.
[2] James H. Rowell, as acting director of finance, and Robert L. Childree, as State comptroller, were also named as defendants.
[3] For example, although we express no opinion as to the validity of their approach, in fiscal year 1982-83, Governor Fob James and Director of Finance Joseph Broadwater set out and applied guidelines that exempted the cost of certain constitutional responsibilities of the judicial system from proration, pursuant to their understanding of Abramson and relevant constitutional provisions.
[4] It is worth noting, in addition to constitutional considerations, that the failure of the courts to comply with Federal requirements in this program and other similarly mandated programs can result in the loss of Federal funding and the imposition of additional federally required expenditures from the State. In many cases, such additional State expense and loss of Federal funds would reduce State funds by an amount far greater than any savings gained by proration of judicial services.