"It is settled law that the Legislature may not constitutionally delegate its powers, whether the general power to make law or the powers encompassed within that general power, including the `power of the purse' — the power to make appropriations." Folsom v. Wynn, 631 So.2d 890, 894 (Ala. 1993). This doctrine of nondelegation is "rooted in the principle of separation of powers that underlies our tripartite system of Government." Mistretta v. United States, 488 U.S. 361, 371
(1989); see Ala. Const. 1901, Art. III, § 43. "However, the doctrine of separation of powers does not prohibit the Legislature's delegating the power to execute and administer the laws, so long as the delegation carries reasonably clear standards governing the execution and administration."[10] Folsom, 631 So.2d at 894. Thus, "[s]o long as [the legislature] `shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" Mistretta, 488 U.S. at 372
(quoting J.W. Hampton, Jr., Co. v. United States, 276 U.S. 394,406 (1928)) (alteration in Mistretta).
In this case, the majority states that because the statute "does not vest the Governor with unlimited discretion to decide what amount retailers can claim as a sales-tax discount," the sales-tax discount statute, Ala. Code 1975, § 40-23-36, contains sufficient guidance for the Governor's exercise of his authority to set a maximum discount for each license holder. 762 So.2d at 833. A limitation on the Governor's discretion, however, is not the same as guidance for the Governor's exercise of authority. The maximum rates for the sales-tax discount prescribed in § 40-23-36(a) give the Governor no guidance as to the maximum discount he should set under § 40-23-36(b).[11] *Page 835 
In Folsom, this Court held that the proration statute, Ala. Code 1975, § 41-4-90, was a constitutional delegation of authority to the Governor, because the statute contained sufficient guidance for the Governor's exercise of that authority. 631 So.2d at 895. Specifically, § 41-4-90 provides that "[t]he governor shall restrict allotments to prevent an overdraft or deficit," and that all allotments "shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimated by the department of finance." The proration statute at issue inFolsom provides guidance in terms of a clear objective — "to prevent an overdraft or deficit." The language of the sales-tax discount statute, however, provides no objective and no factors for the Governor to consider in determining the rate or the maximum discount. Cf. Mistretta, 488 U.S. at 374-76 (upholding Congress's delegation of authority to the Sentencing Commission to promulgate sentencing guidelines where Congress, among other things, "charged the Commission with three goals"; "specified four `purposes' of sentencing"; and directed it to consider several specified "factors").
In interpreting a statute delegating power to the executive branch, we defer to the executive branch's own interpretation of the power delegated to it by the Legislature. See, e.g., QCC,Inc. v. Hall, 757 So.2d 1115, 1119 (Ala. 2000) (citingChevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,467 U.S. 837, 842 (1984)). Therefore, if the executive branch articulates a reasonable and permissible objective to be achieved by the exercise of delegated authority, and the actual exercise of that authority is reasonably calculated to achieve that objective and is not otherwise impermissible, then both the delegation of authority and the exercise of that authority are valid. See QCC,Inc. v. Hall, 757 So.2d at 1119. ("If the [executive's] reading [of a statute] fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give the [executive's] judgment `controlling weight.'") (quotingNationsBank of North Carolina, N.A. v. Variable Annuity Life Ins.Co., 513 U.S. 251, 257 (1995), quoting in turn ChevronU.S.A., 467 U.S. at 844). However, where, as here, the legislative grant of authority contains no explicit guidance for the executive branch, and the executive branch offers no explanation of the goal it seeks to achieve in its exercise of that authority, the exercise is void.
For the foregoing reasons, Executive Orders 19 and 20, by which the Governor purported to authorize the Department of Revenue to implement the $900-per-license-holder cap on the sales-tax discount, are void. Therefore, I must respectfully dissent.
LYONS, J., concurs.
[10] Such standards enable a court "`in a proper proceeding [to] ascertain whether the will of [the legislature] has been obeyed.'" Mistretta, 488 U.S. at 379 (quoting Yakus v. UnitedStates, 321 U.S. 414, 426 (1944)).
[11] The validity of the sales-tax discount itself, which was authorized by Executive Order No. 2 in 1960 pursuant to the statute now codified as § 40-23-36(a), is not before this Court. The majority construes § 40-23-36(a) as delegating to the Governor the power to authorize a sales-tax discount for the purpose of "ensuring collection and the prompt remittance of sales taxes to the State." 762 So.2d at 834. Under that construction, the validity of Executive Order No. 2 and the administrative regulations promulgated pursuant to it, would depend on whether the discount thereby established was reasonably calculated to achieve that purpose and was not otherwise impermissible. The majority does not consider whether the $900 maximum discount is reasonably calculated to achieve that judicially articulated purpose.